*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0182P (6th Cir.)
File Name: 04a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*       No. 02-6437

HENRY A. BOSTIC,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 02-00068—James H. Jarvis, District Judge.

Argued: January 28, 2004

Decided and Filed: June 17, 2004

Before: MARTIN, RYAN, and MOORE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellant. John O. Gibson, Loudon, Tennessee, for Appellee. **ON BRIEF:** David C. Jennings, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellant. John O. Gibson, Loudon, Tennessee, for Appellee.

———————————

MOORE, J., delivered the opinion of the court, in which MARTIN, J., joined. RYAN, J. (pp. 21-23), delivered a separate concurring opinion.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. The government, with the approval of the Solicitor General, appeals from the sentence imposed by the district court on Henry Alvin Bostic ("Bostic"). Pursuant to a written plea agreement, Bostic pleaded guilty to firearms charges. At Bostic's sentencing hearing, the district court granted a downward departure under United States Sentencing Guideline ("U.S.S.G.") § 5H1 "[d]ue to the defendant's age, infirmity and poor health." Joint Appendix ("J.A.") at 28. On appeal, the government argues that the district court erred in granting this downward departure because (1) the district court failed to sentence Bostic in accordance with the framework of the sentencing guidelines; (2) the district court failed to determine that Bostic's age and infirmities made his case exceptional and would make incarceration inefficient and costly; and (3) the district court erred in granting a departure based upon the present record.

For the following reasons, we **VACATE** Bostic's sentence and **REMAND** for re-sentencing.

## I. BACKGROUND

The Bureau of Alcohol, Tobacco and Firearms ("ATF") investigated Bostic from June 9, 2000 through June 5, 2002. During this period, Bostic "regularly and willfully engaged in the business of selling firearms," but "did not have, and has never had a federal firearms license." J.A. at 46 (Presentence Report ("PSR") ¶ 14). Over the course of this investigation, "ATF special agents and confidential informants purchased a

total of 24 firearms from [Bostic] on 20 different occasions." J.A. at 46 (PSR ¶ 15). Most of these transactions took place at Bostic's residence. Bostic "sold firearms to convicted felons and to a resident of a state other than the state in which [Bostic] resides." J.A. at 47 (PSR ¶ 16). Bostic was also "observed selling more firearms than those purchased by the ATF." J.A. at 47 (PSR ¶ 16).

"On June 27, 2001, an ATF special agent sent [Bostic] a certified letter advising [him] of the federal firearms laws, including the provision prohibiting a person who is not a federal firearms licensee from engaging in the business of dealing in firearms." J.A. at 47 (PSR ¶ 18). On June 30, 2001, Bostic signed a return receipt indicating that he had received the letter. On July 5, 2001, an informant went to Bostic's house and purchased a firearm from Bostic. At that meeting, Bostic told the informant about the warning letter that he had received from the ATF regarding his firearms dealing.

On June 5, 2002, a grand jury returned a nine-count indictment charging Bostic with various firearms offenses. Count One of the indictment charges Bostic with willfully engaging in the business of dealing in firearms without a license, including but not limited to the guns identified in the remaining counts of the indictment, "from on or about June 9, 2000, up to and including June 5, 2002," in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). J.A. at 5 (indictment). Count Two of the indictment charges Bostic with knowingly selling and disposing "of firearms, that is, a Lorcin .22 caliber pistol and a North American Arms mini-revolver," to a person while knowing that person was a convicted felon, "on or about October 3, 2000," in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2). J.A. at 5 (indictment). Counts Three through Nine charge Bostic "with sales of specific firearms on specific dates to persons whom [Bostic] knew, or should have known, were convicted felons, in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2)." Appellant's Br. at 2.

On June 6, 2002, ATF agents arrested Bostic and searched his residence pursuant to a warrant. During that search, ATF agents seized six firearms. Bostic told ATF agents that "he had bought, sold and traded firearms for approximately 20 years." J.A. at 47 (PSR ¶ 20). Bostic also told ATF agents that he had received the warning letter "and understood the letter to mean he could not buy and sell numerous firearms without a license." J.A. at 47 (PSR ¶ 20). According to the PSR, Bostic "stopped buying firearms that required filling out paperwork, but thought he could still trade guns and make occasional sales." J.A. at 47 (PSR ¶ 20).

Also on June 6, 2002, Bostic was released on a $20,000 unsecured bond. Thereafter, Bostic and the government entered into a written plea agreement whereby Bostic agreed to plead guilty to Counts One and Two of the indictment, and the government agreed to dismiss Counts Three through Nine of the indictment and not to oppose a three-level reduction in offense level for acceptance of responsibility. On August 19, 2002, Bostic pleaded guilty to Counts One and Two.

On September 28, 2002, prior to sentencing, Bostic filed a motion for a downward departure pursuant to U.S.S.G. §§ 5K2.0, 5H1.1, and 5H1.4, requesting that he be sentenced to probation, possibly including home detention, instead of prison due to his advanced age (eighty-two) and his poor health (emphysema, anemia, and coronary artery disease). In support of his motion, Bostic filed a letter from his treating physician, John D. Arnett, M.D., which states:

At this time [Bostic] remain[s] in stable condition. He, however, has serious underlying medical problems.

It is my understanding from discussion with [Bostic's attorney] that he is facing approximately two years in prison for selling guns without a license. At this time imprisonment would adversely affect his life expectancy and also his health. Due to his coronary artery disease I would expect him to have more recurrences of his atrial

fibrillation. He will be under medical therapy for the remainder of his life and we can reasonably expect that there will be intermittent periods of hospitalization.

J.A. at 18. This letter is the only medical evidence — indeed it is the only evidence — that Bostic introduced in support of his motion.

In Bostic's PSR, prepared on October 10, 2002, the probation officer assigned Bostic a base offense level of fourteen in accordance with U.S.S.G. § 2K2.1(a)(6). The probation officer recommended a six-level increase pursuant to U.S.S.G. § 2K2.1(b)(1)(C) because Bostic sold between twenty-five and ninety-nine firearms, in that Bostic sold twenty-four firearms to informants and undercover ATF agents, possessed six firearms at the time of his arrest, and was observed selling additional firearms over the course of the investigation. The probation officer recommended an additional two-level increase pursuant to U.S.S.G. § 2K2.1(b)(4) because at least one of the firearms Bostic sold had an obliterated serial number. The probation officer recommended a three-level downward adjustment for acceptance of responsibility. Bostic had no criminal history points, and thus was assigned a criminal history category of I. Accordingly, the probation officer recommended a total offense level of nineteen, and calculated Bostic's guideline range to be thirty to thirty-seven months of imprisonment, with a fine between $6,000 and $60,000, and a special assessment of $200. Bostic's guideline range, however, was located in "Zone D"; therefore, Bostic was not eligible for probation under U.S.S.G. § 5B1.1(a).

In the "Physical Condition" section of the PSR, the probation officer reported:

[Bostic] is treated by John D. Arnett, M.D., Knoxville, Tennessee. [Bostic] has atherosclerotic cardiovascular disease, anemia, asbestosis, hypertension, type-II diabetes and chronic obstructive pulmonary disease from

tobacco use. He is prescribed Ranitidine, Combivent, Serovent, Cordarone, and Hyzaar. The Cordarone is prescribed for atrial fibrillation. The defendant underwent left heart catheterization on May 14, 2002.

J.A. at 50 (PSR ¶ 51). Then, in the "Factors that May Warrant Departure" section of the PSR, the probation officer noted,

[Bostic] is 82 years old and has numerous health problems. Pursuant to USSG § 5H1.1, "Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."

J.A. at 54 (PSR ¶ 70). The probation officer, however, stated that she was not necessarily making a recommendation for departure. Each party filed a notice of no objection to the PSR.

At the sentencing hearing, on November 6, 2002, the government's counsel mentioned the defendant's downward-departure motion but failed to make an explicit objection. After acknowledging that Bostic pleaded guilty to Counts One and Two, the district judge read the maximum penalties for those counts. The district court then asked Bostic whether he had read the PSR and whether the PSR was accurate; Bostic responded in the affirmative. The court and the government's counsel then engaged in a brief exchange, during which the government's counsel stated that he would like to present evidence regarding Bostic's offense conduct before the court ruled on Bostic's downward-departure motion. The government's counsel then introduced the ATF warning letter, played a tape of the conversation during which Bostic mentioned the letter, and introduced a transcript of that tape. After introducing this evidence, the government's

counsel stated that he would like to address the issue of sentencing after Bostic's counsel had an opportunity to speak.

Following the government's introduction of evidence regarding the offense conduct, Bostic did not introduce any additional evidence supporting his motion for a downward departure. When the district judge asked what Bostic's medical problems were, Bostic's counsel stated, "[Bostic] has emphysema and heart trouble, Your Honor." J.A. at 36 (Sentencing Hr'g Tr. at 36).

The district court then granted a downward departure and sentenced Bostic "to five years of probation on each count to run concurrently" and a $6,000 fine. J.A. at 37. After explaining the conditions of Bostic's probation, the district court accepted the plea agreement, dismissed Counts Three through Nine, clarified the due date of the fine, and adjourned the sentencing hearing. The district court did not explicitly give the government an opportunity to object after it pronounced Bostic's sentence, nor did the government's counsel interrupt the district judge to object. On November 13, 2002, the district court entered a Judgment and Commitment Order detailing Bostic's sentence.[1] The government filed a timely notice of appeal.

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 because Bostic was charged with offenses against the laws of the United States. This court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b).

---

[1] Although it is not reflected in the sentencing hearing transcript, Bostic contends "that the [Assistant U.S. Attorney] left the Courtroom before the Judge left the bench." Appellee's Br. at 2.

### B. Standard of Review

The government asserts that, although it did not make a specific objection, it noted its opposition to Bostic's motion for a downward departure at the outset of the sentencing hearing and was not given an opportunity to argue its opposition either before or after the district court pronounced Bostic's sentence. The government argues that it should not be required to demonstrate plain error either because it adequately objected or because it was not given the opportunity to object.

We conclude that the government failed to object adequately in the district court to Bostic's motion for a downward departure. Bostic filed a motion for a downward departure on September 28, 2002. The government did not file any papers opposing that motion. At the sentencing hearing on November 6, 2002, after questioning Bostic about the PSR, the district court asked, "Now, what does the U.S. Attorney have to say about this?" J.A. at 34 (Sentencing H'rg Tr. at 4). In response, the government's counsel stated,

> Your Honor, as the Court is I am sure aware, Mr. Gibson [Bostic's counsel] has filed a motion for downward departure pursuant to 5K2 based on the defendant's age, his health and he has attached several letters from members of the community asking the Court not to imprison him. Before the Court rules on that motion, I have a very brief evidentiary matter I would like to present to the Court.

J.A. at 34 (Sentencing Hr'g Tr. at 4). The evidentiary matter to which the government's counsel was referring concerned the offense conduct, not Bostic's motion for a downward departure. This statement indicated to the district court that the government was aware of Bostic's motion, but the government's statement did not inform the district court or defense counsel whether or not the government opposed the downward-departure motion.

After presenting his evidence, the government's counsel stated, "I would just like to address the Court on the government's view on sentencing after we hear from Mr. Gibson, Your Honor." J.A. at 35 (Sentencing Hr'g Tr. at 5). This statement indicated to the district court that the government's counsel wished to speak, but it did not inform the district court or defense counsel of the government's position regarding the downward-departure motion.[2]

A party "must 'object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.'" *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir.) (quoting *United States v. Fendley*, 522 F.2d 181, 186 (5th Cir. 1975)), *cert. denied*, 449 U.S. 849 (1980); *see also* Fed. R. Crim. P. 51(b). A specific objection provides the district court with an opportunity to address the error in the first instance and allows this court to engage in more meaningful review. The government's statements to the district court did not constitute a sufficiently articulated objection.

We hold that the government's failure to object should not be excused in this case, and therefore, that we should review the district court's judgment for plain error. After reviewing the applicable procedural rules and circuit precedent, we conclude that the district court conducted the sentencing hearing in compliance with our existing precedent. Federal Rule of Criminal Procedure ("Rule") 51(b)[3] requires a party

---

[2] We find it somewhat incredible that the government was able to mention at the sentencing hearing Bostic's motion for a downward departure — without stating that it opposed such a departure — and now claims on appeal that it was not given an opportunity to object to that motion.

[3] Rule 51(b) provides:
A party may preserve a claim of error by informing the court — when the court ruling or order is made *or sought* — of the action the party wishes the court to

---

to object in order to preserve an issue for review, but excuses the failure to object if that party had no opportunity to do so. Rule 32(i)[4] requires the court to allow the defendant, counsel for the defendant, and counsel for the government each an opportunity to speak. The cases that the government relies upon to support its argument that its failure to object should be excused differ from the case at bar in an important respect — in both of the cases cited by the government, the aggrieved party did not have notice of the issue prior to district court's pronouncement of the sentence, and the district court did not give the aggrieved party an opportunity to object after it pronounced the sentence. *United States v. Breeding*, 109 F.3d 308, 310 (6th Cir. 1997); *United States v. Hickey*, 917 F.2d

---

take, or the party's objection to the court's action and the grounds for that objection. If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party.
Fed. R. Crim. P. 51(b) (emphasis added).

[4] Rule 32(i)(1) provides:
At sentencing, the court:
. . .
(C)    must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence . . . .
Fed. R. Crim. P. 32.
Rule 32(i)(4)(A) provides:
Before imposing sentence, the court must:
(i)    provide the defendant's attorney an opportunity to speak on the defendant's behalf;
(ii)    address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and
(iii)    provide an attorney for the government *an opportunity* to speak equivalent to that of the defendant's attorney.
*Id*. (emphasis added).

901, 906 (6th Cir. 1990).[5] In this case, however, Bostic filed a motion for a downward departure prior to the sentencing hearing, and the government had an opportunity to file opposition papers and to object when the government's counsel spoke at the sentencing hearing, yet the government failed to do either.

In this case, after reviewing the PSR, the district court asked, "Now what does the U.S. Attorney have to say about this?" J.A. at 34 (Sentencing H'rg Tr. at 4). Moreover, at the time the government was invited to speak, it was on notice that Bostic had moved for a downward departure; therefore, the district court gave the government a meaningful opportunity to object to Bostic's motion for a downward departure. It is true that the government indicated that it would like to address the district court later regarding the departure motion, and thereafter the government was not explicitly given an opportunity to do so. The district court, however, gave the government an opportunity to speak regarding sentencing and never prevented the government from addressing the departure issue, which is all that our existing precedent required.

Although we disagree with the concurrence's reading of our existing precedent and with its narrow understanding of "opportunity to object," we think that the rule our colleague

---

[5] Unlike the concurrence, we view more narrowly the rule announced in *United States v. Hickey*, 917 F.2d 901, 906 (6th Cir. 1990), in that it requires the district court to provide an opportunity for the parties to object after pronouncing the defendant's sentence only when the parties had no prior notice of the action the district court eventually took. In *Hickey*, the government had specifically argued "that its failure to [make an objection] is excused . . . because it had no reason to suspect that a fine would not be imposed until it was too late, *i.e.*, the sentence had already been imposed." *Id*. Similarly, in *Breeding*, the defendant had specifically argued, "The very first time there was mention of the potential for an additional fine . . . occurred when the court imposed judgment. It was clear at that time that the time for argument was over." *United States v. Breeding*, 109 F.3d 308, 310 (6th Cir. 1997).

urges is a wise one. Therefore, we exercise our supervisory powers over the district courts and announce a new procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised.[6] If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal. If a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal. Providing a final opportunity for objections after the pronouncement of sentence, "will serve the dual purpose[s] of permitting the district court to correct on the spot any error it may have made and of guiding appellate review." *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir.), *cert. denied*, 498 U.S. 906 (1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (1993). Requiring clear articulation of any objection and the grounds therefor, "will aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply

---

[6] Due to the difficulty of parsing a transcript to determine whether during a sentencing hearing — which is typically somewhat less formal than a trial — a party had a meaningful opportunity to object, we agree with the concurrence that the best approach is for district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to elicit any objections not previously raised by the parties. "We can use our supervisory powers to create a procedural rule so long as the rule does not conflict with the Constitution or a statute." *United States v. Waters*, 158 F.3d 933, 944 (6th Cir. 1998). In *United States v. Jones*, 899 F.2d 1097, 1102-03 (11th Cir.), *cert. denied*, 498 U.S. 906 (1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993), the Eleventh Circuit exercised its supervisory powers to adopt a rule similar to the one endorsed by the concurrence in the case at bar.

the proper standard of review to those preserved." *Id*. at 1102-03. This rule applies only prospectively, and because we are remanding to the district court, this rule will apply at Bostic's re-sentencing. *United States v. Waters*, 158 F.3d 933, 945 (6th Cir. 1998).

Because existing precedent did not excuse the government's failure to object, and because we conclude that Bostic's sentence must be vacated regardless of the scope of our review, we will review the downward departure for plain error.[7] *See United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *Id*.

## C. Downward Departure

On appeal, the government contends that the district court erred by sentencing Bostic to probation without following the methodology required by the sentencing guidelines and requests that we vacate Bostic's sentence and remand this case for re-sentencing. The government points out that at the sentencing hearing, the district court did not state the number of levels it was departing downward or discuss the specific reasons why it thought probation was reasonable. The government next argues that the district court erred by failing to determine whether Bostic's age and infirmities made his case exceptional and would make incarceration inefficient and costly. The government requests that on remand Bostic be

---

[7] In a Rule 28(j) letter, dated December 1, 2003, the government contends that the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003) ("PROTECT Act") § 401(d)(1)(C), requires this court to review de novo a district court's decision to grant a downward departure. The government did not argue that the PROTECT Act requires de novo review in a case where the government failed to object below, and although we doubt that it does, we do not decide that issue in this appeal because we conclude that the district court committed plain error.

required to support his downward-departure motion with competent medical evidence, and that the district court be required to determine whether Bostic's impairments are exceptional, whether the Bureau of Prisons ("BOP") can accommodate Bostic's impairments, and "whether home confinement may be more efficient and less costly." Appellant's Br. at 27. Finally, the government argues that the district court abused its discretion in granting a downward departure based upon the present record. The government points out that Bostic was only hospitalized once in May 2002 for atrial fibrillation, that after hospitalization Bostic was in stable condition, and that as of sentencing Bostic had experienced no recurrence of his condition. The government further notes that Bostic's age did not limit his criminal activity, and that the district court's threat to incarcerate Bostic for a probation violation indicates that the district court considered imprisonment a viable sentencing option.

Instead of countering the government's arguments that the district court failed to follow the methodology required by the sentencing guidelines, Bostic argues that the government's failure to object to the downward departure indicated to the district court that the government agreed with the court's methodology. Bostic also points out that the district court made the factual findings that imprisonment would adversely affect Bostic's life expectancy due to his age and infirmity and that Bostic will need medical attention and periodic hospitalization; Bostic argues that these findings were reasonable and were permissible bases for departure under the sentencing guidelines.

The first two factors that an appellant must prove in order to obtain reversal under plain error review are (1) that the district court erred and (2) that the error was plain. *United States v. Olano*, 507 U.S. 725, 732-34 (1993); *see also United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998), *cert. denied*, 526 U.S. 1030 (1999).

At sentencing, the district court stated that it was granting a downward departure, "[b]ecause of [Bostic's] age and because of [Bostic's] infirmity and because of [Bostic's] health," but did not specify the number of levels it was departing. J.A. at 37 (Sentencing H'rg Tr. at 7). The calculations in the PSR, which the district court adopted, set Bostic's total offense level at nineteen. To sentence Bostic as it did, to probation without home confinement, the district court had to reduce Bostic's offense level to eight, which is an eleven-level departure. *See* U.S.S.G. Ch. 5 Pt. A; U.S.S.G. § 5B1.1(a).

A district court's decision to depart downward is controlled by the following statutory provision:

> (1) IN GENERAL. — Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range [determined by the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b). To sentence a defendant outside of the guideline range, the district court must determine that the case falls outside of the heartland of cases in the guideline range. *Koon v. United States*, 518 U.S. 81, 98 (1996). The defendant has the burden of proving that a downward departure is warranted. *United States v. Rutana*, 932 F.2d 1155, 1159 (6th Cir.), *cert. denied*, 502 U.S. 907 (1991). In order to determine that a case falls outside of the heartland, the district court must conduct "a refined assessment of the many facts bearing on the outcome, informed by [the district court's] vantage point and day-to-day experience in criminal sentencing." *Koon*, 518 U.S. at 98. Furthermore, the district court must determine the size of the departure by tying it to the structure of the sentencing guidelines, and the size of the departure must be reasonable given the factors sentencing

courts are required to consider and the facts of the case. *United States v. Crouse*, 145 F.3d 786, 792 (6th Cir. 1998); *see also* 18 U.S.C. § 3742(e)(3)(C).

Under the sentencing guidelines, age and health are disfavored factors that the district court may use as bases for granting a downward departure only in exceptional circumstances. *See* U.S.S.G. §§ 5H1.1 and 5H1.4.[8] Section 5H1.1 provides:

> Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range *when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.*

(emphasis added). Section 5H1.4 provides:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; *e.g.*, *in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.*

(emphasis added). As these provisions make clear, age and physical condition are not prohibited considerations, but they are discouraged factors that justify a downward departure only in extraordinary situations. U.S.S.G. §§ 5H1.1, 5H1.4. Moreover, these provisions require the district court to

---

[8]Bostic's sentence was determined using the 2001 version of the United States Sentencing Guidelines ("U.S.S.G."), and neither party objected on appeal to the use of that version; therefore, we do not address the propriety of applying that version.

consider the relative costs and efficiency of home confinement and imprisonment. *Id.*

In *United States v. Johnson*, 71 F.3d 539, 544-45 (6th Cir. 1995), *cert. denied*, 517 U.S. 1113 (1996), we vacated the defendant's sentence upon another ground, but also directed the district court on remand to make more specific findings regarding whether the defendant's medical condition was extraordinary and whether the BOP could accommodate the defendant. The sixty-five-year-old defendant in *Johnson* provided evidence of his medical condition in the form of a letter from his attending physician, who diagnosed the defendant "with diabetes, hypertension, hypothyroidism, ulcers, potassium losing enteropathy, and reactive depression," and a letter from his psychiatrist, who diagnosed the defendant "with major depressive disorder." *Id.* Additionally, both doctors were prescribing medication for the defendant and believed that incarceration would detrimentally affect the defendant's health. We noted "that an aged defendant with a multitude of health problems may qualify for a downward departure under § 5H1.4[, but] such downward departures are rare." *Id.* at 545. We also stated that on remand more evidence than the two doctors' letters might be necessary to enable the district court make the required findings. *Id.*

Similarly, in *United States v. Tocco*, 200 F.3d 401, 434-35 (6th Cir. 2000), we vacated the defendant's sentence upon another ground, but also directed the district court on remand to make more specific findings regarding whether the defendant's medical condition was extraordinary and whether the BOP could accommodate the defendant. The seventy-two-year-old defendant in *Tocco* had "arteriosclerotic disease, coronary artery disease, hypertension, renal insufficiency, labrynthitis, and diverticulosis," and "required 'periodic monitoring.'" *Id.* at 434. We criticized the district court for relying solely upon the defendant's PSR when it granted a four-level departure due to the defendant's age and health. *Id.* Additionally, in *Tocco*, we noted that the defendant's "age

alone should not be considered as a basis for a substantial downward departure," because the evidence showed that the defendant remained active in the community. *Id.*

By way of contrast, in *United States v. Sabino*, 274 F.3d 1053, 1078-79 (6th Cir. 2001), we upheld a three-level downward departure that was based upon several factors, including age. The seventy-two-year-old defendant in *Sabino* had "physical deficiencies . . . , particularly ailments with his eyes and ears." *Id.* at 1079. In upholding the downward departure, we reasoned that the departure was small and based upon several factors, including "the death of [the defendant's] wife a few months before sentencing; [the defendant's] age (72) at the time of sentencing; his physical deficiencies . . . ; the absence of any physical threat to others; the absence of a risk of flight; and the conclusion that [the defendant] played a minor role in the conspiracy." *Id.*

Here, the district court effectively granted an eleven-level downward departure based upon Bostic's age and infirmities. As *Tocco* makes clear, age alone cannot justify a *substantial* downward departure. *Tocco*, 200 F.3d at 434. Additionally, the district court granted the downward departure based only upon one letter from Bostic's treating physician and the Physical Condition section of the PSR. Although numerous "physical infirmities" might justify a downward departure, *Johnson* and *Tocco* indicate that a doctor's letter and the "Physical Condition" section of the PSR are not sufficient evidence to justify a downward departure.[9] Finally, the district court made no findings regarding whether Bostic's case is extraordinary, whether the BOP could accommodate Bostic, and whether home confinement would be equally

---

[9]As in *Johnson* and *Tocco*, we think it is appropriate for the district court to "obtain independent and competent medical evidence to determine the extent of [defendant's] infirmities and the prison system's ability or inability to accommodate him." *United States v. Tocco*, 200 F.3d 401, 435 (6th Cir. 2000) (citing *United States v. Johnson*, 71 F.3d 539, 545 (6th Cir. 1995)).

efficient and less costly. Therefore, the district court erred by granting an eleven-level departure without sufficient evidence. If upon remand the evidence shows that Bostic's case warrants a departure, the district court must still find that the reasons justify the magnitude of the departure selected. *Crouse*, 145 F.3d at 792. *Johnson* and *Tocco* do not foreclose the possibility that Bostic's age and infirmities warrant a departure; however, it seems unlikely that his infirmities warrant an eleven-level departure. Because the case law requiring district courts to make the above factual findings and to justify the magnitude of a departure predates Bostic's sentencing, and because the district court utterly failed to do either, the district court's error was plain.

The final factors that an appellant must prove in order to obtain reversal under plain error review are (3) that the error affected substantial rights and (4) that "the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 734-37 (quotation omitted); *see also Koeberlein*, 161 F.3d at 949. A sentencing error affects substantial rights when "it affects the outcome of the case by substantially reducing the defendant's sentence." *Barajas-Nunez*, 91 F.3d at 833. And a sentencing error that leads to a substantial departure affects the fairness and integrity of judicial proceedings because "[p]ermitting sentencing courts to disregard governing law would diminish the integrity and public reputation of the judicial system [and] also would diminish the fairness of the criminal sentencing system by imposing a significantly smaller sentence on" one defendant than it would have upon a different defendant who committed the same crime under similar circumstances. *Id*. Moreover, such disparities "would fly in the face of one of the primary purposes of the sentencing guidelines — the elimination of disparities in sentencing." *Id*.

Here, the district court erred by granting a downward departure without making the requisite factual findings, and this error affected the government's and the United States citizens' substantial rights because it drastically reduced

Bostic's sentence from a term of imprisonment to a term of probation. *See id.* This error also affected the fairness and integrity of judicial proceedings because the district court disregarded the applicable sentencing guidelines and case law, and because Bostic received a significantly smaller sentence than might have been imposed upon a different defendant who committed the same crime under similar circumstances. *See id.*

Because the district court imposed Bostic's sentence in violation of the methodology required by the sentencing guidelines and applicable case law, we must vacate and remand.[10] *See id.* at 834 (noting that district court's failure to justify the extent of a departure makes the decision virtually unreviewable).

### III. CONCLUSION

We conclude that the district court committed plain error by granting an eleven-level downward departure without tying the departure to the framework of the sentencing guidelines or making the required findings of fact. Therefore, we **VACATE** Bostic's sentence and **REMAND** for re-sentencing.

---

[10]On remand, the district court should consider whether § 401 of the PROTECT Act, particularly subsections (e) and (g), applies retroactively and limits its discretion at re-sentencing, and if relevant, address in the first instance any constitutional problems those limitations might raise.

———————————

### CONCURRENCE

———————————

RYAN, Circuit Judge, concurring. While I agree that the defendant's sentence should be vacated, I do not join in the majority's holding that the government waived its objection to the defendant's sentence. In my view, the sentence should be vacated and the case remanded for resentencing because the prosecutor was not given a reasonable opportunity to be heard at the sentencing hearing in order to articulate his objection to the radical downward departure the defendant was seeking and ultimately received.

At the very outset of the sentencing hearing, the prosecutor acknowledged that the defendant had filed a motion for a downward departure and asked that he be allowed to address the court regarding the government's position on sentencing. He was never given that opportunity. Following the government's request to be heard, the district court engaged in a colloquy with the defendant and his attorney. In the midst of that colloquy, and without affording the Assistant U.S. Attorney an opportunity to speak, the district judge granted the motion for a downward departure, imposed the sentence, and abruptly left the bench.

My sister has characterized the prosecutor's request to be heard as being limited to an evidentiary matter concerning the defendant's offense conduct and that the government's request gave no indication that it objected to the defendant's motion for a downward departure. Respectfully, she is mistaken. *After* the government introduced its evidence concerning the defendant's offense conduct, the prosecutor informed the court that he wanted to be heard on yet another matter, stating as follows: "I would just like to address the Court on the government's view on sentencing after we hear from [defense counsel], Your Honor."

Our precedent is clear, that in cases such as this, "where the district court fails to provide an opportunity for objections after the pronouncement of a sentence, waiver should not be found." *United States v. Breeding*, 109 F.3d 308, 310 (6th Cir. 1997). Moreover, where there is an explicit grant of authority for challenging a sentence and where the government does not have an opportunity to object following the pronouncement of sentence, there is no waiver. *United States v. Hickey*, 917 F.2d 901, 906 (6th Cir. 1990). In the case before us, the explicit grant of authority for challenging the defendant's sentence is found in 18 U.S.C. § 3742(b)(3), which states the following:

> The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
>
> (3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser . . . term of imprisonment, probation, or supervised release than the minimum established in the guideline range . . . .

18 U.S.C. § 3742(b)(3). There is no dispute that the sentence imposed is below "the minimum established in the guideline range." *Id.* Because there is an explicit grant of authority for challenging the defendant's sentence and because the prosecutor was not given a reasonable opportunity to object to the downward departure, the government did not waive its right to appeal this issue. The prosecutor made it very clear that he wished an opportunity to address the court in opposition to defense counsel's request for leniency. He was not obligated to reassert his request by repeating himself, by interrupting the trial judge in the midst of pronouncing sentence, or by attempting to call the judge back to the bench as he was leaving. There is no rule of law or practice, of which I am aware, that requires the prosecutor to repeat his request to be heard, or face, as in this case, an appellate adjudication that the issue is waived.

With all due respect to my colleagues who see it differently, the record of this case does not call for the preparation of a lengthy published opinion, creating a new, rigid rule of sentencing law that further narrows and restricts the relatively limited discretion left to trial judges under the Sentencing Guidelines. The Federal Rules of Criminal Procedure and our existing case precedent sufficiently set forth the duties of the district court at sentencing and I strongly object to the adoption under our "supervisory power" of still another uncodified "procedural rule" telling district judges what to incant *after* sentencing a person.

This case appears to be nothing more than an uncharacteristic and inadvertent mistake by a highly respected district judge, who has conducted more rule-conforming sentencing proceedings in an exemplary fashion than he or we can count. Very likely, he simply forgot to do what he regularly does: ask both counsel if they had anything further to say. In my view, the prosecutor adequately put the district court on notice that the government objected to the motion for a downward departure. Accordingly, the proper standard of review is abuse of discretion. *United States v. Tocco*, 200 F.3d 401, 432 (6th Cir. 2000). I conclude that the district court abused its discretion by imposing a sentence without first giving the prosecutor an opportunity to address the court, after being earlier advised by the prosecutor that he "would just like to address the Court on the government's view on sentencing . . . ."

The only appropriate remedy is to vacate the sentence and remand for resentencing.