NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0394n.06

No. 09-6471

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 10, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| SEKOU FOFANA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COOK, MCKEAGUE, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. After Sekou Fofana violated the terms of his supervised release, the district court sentenced him to thirty months' imprisonment followed by thirty-six months' supervised release. Fofana now appeals, claiming that the district court (1) issued a sentence that exceeded the statutory maximum and (2) violated his due process rights by sentencing him more harshly based on his alien status.[1] For the following reasons, we vacate his supervised-release sentence and remand for resentencing.

---

[1]In his brief, Fofana additionally claimed that the district court issued a substantively unreasonable sentence. But because his incarceration ended prior to oral argument, Fofana has conceded that this argument is moot. *See United States v. Brown*, --- F.3d ----, 2011 WL 1843377, at *1 (6th Cir. May 17, 2011).

I.

Illegal alien Sekou Fofana pleaded guilty to participating in a "black money" scheme in violation of 18 U.S.C. § 514.[2] The district court sentenced him to six months' imprisonment and five years' supervised release.

At the conclusion of Fofana's prison term, authorities released him into the custody of Immigration and Customs Enforcement (ICE). Pending a deportation hearing, ICE released Fofana on bond; he was supposed to report to probation within seventy-two hours to begin his supervised release. He did not report until a year later—after probation issued a follow-up notice—and then received instructions regarding the conditions of his supervised release. Fofana then failed to call the probation office to learn which officer it had assigned to him. Efforts to reach Fofana proved futile. Fofana's officer could not reach him via telephone and, upon investigating his purported residence, discovered an unopened letter she had sent him. A woman at the residence denied that Fofana lived there.

During his release, authorities arrested Fofana in Harrisburg, Pennsylvania—outside the Eastern District of Pennsylvania, which he was not supposed to leave without permission—for engaging in a fraudulent scheme similar to that which led to his initial conviction. Following

---

[2]A "black money" scheme typically involves presenting the potential victim with stacks of paper (and a few pieces of actual money) dyed black. The perpetrator claims that the money was dyed black to allow it to be smuggled into the United States without intervention from the authorities. The perpetrator then offers to sell the victim the money, along with chemicals to remove the dye.

Fofana's arrest, he contacted his probation office in Pennsylvania; the office "denied his case" and refused to supervise him.

The probation office filed a petition claiming that Fofana violated the terms of his supervised release by failing to (1) surrender to probation following his release by ICE; (2) follow his probation officer's instructions; (3) obtain permission before leaving the Eastern District of Pennsylvania; and (4) notify his probation officer within seventy-two hours of his arrest. Probation later amended its petition to add an allegation that Fofana also violated his supervised-release terms by engaging in the additional fraudulent scheme.

At his revocation hearing, Fofana refused to concede the factual allegations relating to his Harrisburg conduct. The government agreed to proceed based only on the other four alleged violations of his supervised release, which resulted in a guidelines range of three to nine months' imprisonment. The government recommended a twenty-four-month sentence. The district court sentenced Fofana to thirty months' imprisonment and thirty-six months' supervised release. Fofana now appeals his sentence.

## II.

### A.

Fofana first contends—and the government agrees—that, in imposing a sentence of thirty months' incarceration followed by thirty-six months' supervised release, the district court erred by imposing a sentence greater than that authorized by statute. Under 18 U.S.C. § 3583(h),

> [w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release *shall not exceed* the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

(emphasis added). 18 U.S.C. § 514—a class B felony and "the offense that resulted in the original term of supervised release"—permits a maximum term of supervised release of sixty months. *See* 18 U.S.C. § 3583(b). By sentencing Fofana to a total of sixty-six months' imprisonment and supervised release, the district court unlawfully surpassed this limitation, necessitating remand. *See Brown*, 2011 WL 1843377, at *2–3 (vacating defendant's supervised-release sentence where district court failed to heed limitation on length of supervised release imposed by 18 U.S.C. § 3583(h)).

B.

Fofana next claims that the district court violated his Fifth Amendment due process rights by sentencing him more harshly based on his alien status. We ordinarily review constitutional challenges to a sentence de novo, *United States v. Graham*, 622 F.3d 445, 452 (6th Cir. 2010), *cert. denied*, --- S.Ct. ----, 2011 WL 742644 (June 6, 2011) (No. 10-9261), unless the defendant did not register his objection before the district court, in which case plain-error review applies, *see United States v. Hall*, 411 F.3d 651, 653 (6th Cir. 2005). Here, Fofana failed to object at his sentencing hearing. The district court failed, however, to provide Fofana with an opportunity to lodge specific objections after announcing the sentence but before adjourning the sentencing hearing, as required by *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Although not conclusively

determined by this circuit, cases since *Bostic* suggest that this requirement is applicable only to objections regarding error in the sentencing procedure. *See, e.g.*, *United States v. Freeman*, --- F.3d ----, 2011 WL 1226091, at *4 (6th Cir. Apr. 4, 2011); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). If, in fact, *Bostic* does not apply to constitutional claims, Fofana's failure to object would result in plain error-review of Fofana's claim, regardless of the court's own failure to comply with the *Bostic* requirement. On the other hand, if *Bostic* does apply to constitutional claims, we would review Fofana's claim de novo. Because Fofana's claim fails under either standard of review, we decline to decide here which applies.

Summoning precedent from other circuits, Fofana posits that increasing a defendant's sentence based on his alien status violates his due process rights. *See United States v. Garcia-Cardenas*, 242 F. App'x 579, 583 (10th Cir. 2007) ("Sentencing a defendant more harshly because of his alien status violates the defendant's constitutional right to due process."); *United States v. Gomez*, 797 F.2d 417, 419 (7th Cir. 1986) (noting that treating defendants more harshly based on their nationality or alien status "obviously would be unconstitutional").

We need not determine whether to adopt this stance in our circuit because the transcript lacks evidence that the district court increased Fofana's sentence based on his alien status. The court granted an upward variance based on the 18 U.S.C. § 3553(a) factors of retribution, general deterrence, and incapacitation. With respect to incapacitation, which the court described as the "main" factor, the court noted that,

> if Mr. Fofana is not in custody, . . . he's going to be involved in criminal activities. The Court is unable to rely upon the Immigration Service in keeping the defendant in custody. So the Court is going to go outside of the guideline range to impose a higher sentence. And the Court would encourage the Immigration Service, during this time period, to initiate deportation proceedings while he's still in federal custody.

The court focused on averting additional criminal conduct by incapacitating Fofana. Recognizing that Immigration Services may not keep Fofana in custody does not suggest that Fofana received a harsher sentence than he would have were he a legal resident.

Fofana grasps at other instances where the court mentioned his alien status, but these too fail him. In some instances, the court did no more than acknowledge Fofana's alien status and its surprise that Fofana had not already been deported. *See Gomez*, 797 F.2d at 419 ("[T]he sentencing judge [need not] shut his eyes to the reality of the factual situation before him and pretend that the defendant is not an illegal alien . . . ."). In other instances, the court alluded to its previous imposition of a lenient sentence because it believed Fofana would be deported. *See United States v. Jabi*, No. 09-3643, 2011 WL 1042564, at *4 (6th Cir. Mar. 23, 2011) ("[T]he fact that [the defendant] will be deported after serving his sentence could counsel toward a shorter sentence . . . ."). Finally, the court noted its willingness to terminate Fofana's incarceration early if immigration initiated deportation. *See United States v. Molina*, 563 F.3d 676, 679 n.3 (8th Cir. 2009) (noting that court could consider the effects of defendant's eventual deportation in connection with the statutory sentencing factors). In none of these instances does the court suggest that it sentenced Fofana more harshly due to his alien status.

III.

For the above reasons, we vacate Fofana's supervised-release sentence and remand for resentencing.