NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0172n.06

10-4254

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 13, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff Appellee, | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| v. | ) | |
| | ) | |
| NIGEL L. JACKSON, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:   DAUGHTREY, MOORE and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Defendant-Appellant Nigel Jackson appeals his conviction for one count of conspiracy to distribute and possession with intent to distribute marijuana. Specifically, Jackson claims for the first time on appeal that the government breached the terms of his plea agreement, and he requests that this court vacate his sentence and remand his case back to the district court to determine the extent and the effect of the alleged breach.  We have considered the parties' arguments and the record of the proceedings below, and we find no error.

Under the terms of the plea agreement, Jackson agreed to plead guilty and to truthfully provide a "complete statement" concerning all matters relating to the superceding indictment against Jackson and twenty-eight others.  In return, the government dismissed two additional counts against Jackson and promised to refrain from using "any self-incriminating information so provided . . . in

determining the applicable guideline range for sentencing, or as a basis for upward departure from the advisory guideline range" against Jackson. R. 565, Plea Agreement.

Prior to Jackson's sentencing hearing, the Government submitted a sentencing memorandum and a copy of a book Jackson co-authored, *Brittany Hills Conspiracy: Papa Joe's 177 Days on the Run* (the "book"). R. 1105, Sentencing Memorandum. The Government's sentencing memorandum urged the court to consider the book "for a possible enhancement in sentence, in that it subjects those labeled by the defendant as 'snitches' to harassment and threats to their personal safety within the federal prison system." *Id.* at 12-13.

At sentencing, the district court first considered Jackson's multiple objections to his Presentence Report ("PSR"). Jackson's objections all pertained to sentencing enhancements for both his leadership role in the instant case and his prior criminal history. *See* R. 1340, Sentencing Tr. at 40. While the PSR recommended Jackson be assigned 11 criminal history points with a criminal history category of V, the district lowered Jackson's criminal history by one point and reduced his criminal history category to IV after finding that Jackson's criminal history was "at best, slightly overstated." R. 1340 at 31, 38. Consequently, the district court arrived at a guidelines imprisonment range of 151-188 months. *Id.* at 39.

The district court then heard arguments from both parties regarding the book. The Government argued that Jackson's book "should be considered" because of "the impact it has had on other people who have cooperated and how they have been labeled within the prison system . . . as a snitch," which is "very difficult no matter what jail you go to." R. 1340, Sentencing Tr. at 28. Jackson's lawyer responded by noting that Jackson "did his best to be cathartic in this book,"

but acknowledged that "I guess you can take this different ways." *Id.* at 42. Jackson spoke on his own behalf and expressed "no regrets as far as anything I said in the book." *Id.* at 47. At no point during Jackson's sentencing hearing, however, did either Jackson or his lawyer contend that the Government's decision to make the book an issue at sentencing violated his plea agreement.

The district court sentenced Jackson to 140 months in prison, noting that while the court "considered the book . . . I don't believe . . . it plays into the sentence in any direct way." *Id.* at 58. The district court also explicitly stated that it was not considering whether Jackson cooperated. *Id.* at 53-54. The district court made clear the 18 U.S.C. § 3553(a) factors that it considered. *Id.* at 58. The district court then closed the hearing by asking the parties: "Are there any other matters that I have not addressed?" *Id.* at 60. Neither party raised an objection in response to the district court's invitation. *Id.*; s*ee also United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004) (requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, "to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised").

On appeal, Jackson argues for the first time that the Government breached its plea agreement by submitting the book to the district court and by arguing that the book should play a role in the district court's decision calculus. Specifically, Jackson contends that the Government breached the plea agreement "when it argued, without any evidentiary support, that Jackson failed to provide his information it wanted and mislead [sic] the government." Appellant Br. at 5. Jackson also alleges that the "[G]overnment committed a plain error" when it argued "without any evidentiary support, that the book he published made it difficult to obtain cooperation from his co-defendants." *Id.*

Because Jackson raises this issue for the first time on appeal, this Court reviews Jackson's claim for plain error. *Bostic*, 371 F.3d at 872-3. ("If a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity to speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal."). In order for Jackson to prevail under a plain error standard, he must establish: (1) "an error"; (2) the "legal error must be clear or obvious"; (3) "the error must have affected the appellant's substantial rights"; and (4) if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009).

Jackson fails to satisfy any of the *Puckett* prongs, let alone all of them. First, there was no legal error. Jackson offers no cognizable reason why the discussion of the book even implicates the plea agreement. The fact that the Government raised the book as a possible sentencing consideration does not amount to a breach of Jackson's plea agreement. The plea agreement only required the government to refrain from using self incriminating information that Jackson provided in the course of cooperating with the Government. R. 565, Plea Agreement, ¶ 4. Moreover, this Court's review of the Plea Agreement also uncovers no evidence of Government breach. Indeed, because Jackson did not produce the book as a part of his required "complete statement" or "debriefing," the book simply does not fall within the scope of the government's promise "that any self-incriminating information [provided while cooperating with the government] will not be used against the defendant

in determining the applicable guideline range for sentencing, or as a basis for upward departure from the advisory guideline range." *Id.* at ¶ 4. As such, there was no legal error on the merits.

Because there was no legal error, Jackson's appeal automatically fails the second *Puckett* prong. Jackson's appeal fails the third *Puckett* prong because the district court expressly stated that the book did not directly affect Jackson's below-Guidelines sentence. As such, the fourth prong of *Puckett* denies this Court the discretion to offer Jackson any relief. Accordingly, Jackson's conviction is **AFFIRMED**.