NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0438n.06

Case No. 14-5230

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 10, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STEVEN FOUT, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

---

BEFORE: SILER, BATCHELDER, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Defendant Steven Fout appeals the district court's sentence of 151 months for possession and distribution of child pornography. For the reasons stated below, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, FBI agents executed a search warrant and seized computer equipment at Fout's residence, discovering over 600 still images of child pornography and 104 video files. R. 12-1 at 3–4 (sealed document). Many of the images and videos contained one or more aggravating factors (e.g., violence, sadomasochistic conduct, or victims under the age of twelve). *Id*. Fout admitted to sharing child pornography online. *Id*. at 3. In a separate 2011 incident, Fout was

caught but not charged with talking in a sexual manner to a minor in an online chat room. *Id.* at 9.

In 2013, Fout pleaded guilty to both counts of an indictment that charged him with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and one count of distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b). *Id.* at 3. A Presentence Investigation Report ("PSR") calculated a base offense level of 22 and a total offense level of 34, with a Criminal History Category of I. *Id.* at 6–7. The calculated guidelines range was 151 to 188 months. *Id.* at 10.

Fout has neurofibromatosis, a genetic condition which enables the growth of tumors on nerve tissue. *Id.* at 8. He developed brain tumors and was treated with chemotherapy from age nine to age eleven. *Id.* As a result of his neurofibromatosis, he has no vision in his right eye and can only see a distance of five feet from his left eye. *Id.*

Fout is small in stature (5'2", 135 lbs.) and was bullied during high school. *Id.* at 8–10. He claims that he is learning disabled and that he reads on a third grade level. *Id.* at 10. Medical records confirm that Fout has borderline intellectual functioning, ADHD, and PTSD. *Id.* at 8–9.

Fout filed a motion for a downward departure or variance. *See* R. 37 (sealed document). He argued that his blindness and frailty made him particularly vulnerable to abuse in prison, and claimed that "any trauma to his skull (i.e.[,] a fall, being attacked at the jail, etc.) could result in a fatal brain hemorrhage." *Id.* at 4. He noted his "obvious limitations as a slower learner" and his "borderline functioning" status, which create a need for "constant medical and psychological care during his lifetime." *Id.* at 3, 8. His mother and grandmother have provided a crucial support system for his daily needs throughout his lifetime. *Id.* at 3. He argued that he would be adequately deterred by a sixty-month sentence, the most lenient sentence permitted by law. *Id.* at

25–26. In support of this argument, Fout presented several factors that allegedly reduced his risk of recidivism. *Id*. at 27–28. Additionally, he argued that his medical and mental health needs could be treated more effectively in a community setting after a reduced period of incarceration. *Id*. at 36–38.

After hearing argument about Fout's cognitive deficiencies and reviewing online chat room transcripts that were attributed to Fout, the district court concluded that Fout's "functioning level was higher than the functioning level that was being represented." R. 47 at PageID 434. Specifically, the district court determined that Fout was "able to communicate at a much higher level than the argument that was being made." *Id*. at PageID 445. The court later clarified, however, that

> the issue [of Fout's level of functioning] . . . goes to the protection of the public. It does not alter my analysis in terms of the length of incarceration that would be imposed. Again, the parties are in agreement in terms of conditions of supervised release, and so, again, it would not affect the ultimate sentence in the case.

*Id*. at PageID 451.

The district court acknowledged Fout's argument that his particular medical conditions would make him more prone to serious injury or abuse while in prison; however, the court determined that "[t]o base a decision on that argument would be speculation by the court, pure speculation." *Id*. at PageID 432. The court also noted that "the Bureau of Prisons has a variety of individuals that are much smaller and that are much more frail than this defendant." *Id*. at PageID 433. The district court also concluded that Fout had "failed to recognize the pain and the harm, the damage, that's been caused by his actions in possessing and distributing child pornography." *Id*. at PageID 443.

The court denied the motions for a departure or variance. *Id*. at PageID 433, 443. However, the court found that "the arguments that have been made for mitigation would support

a sentence at the bottom of the guideline range," *id*., and accordingly sentenced Fout to 151 months of incarceration. *Id*. at PageID 455.

After passing sentence, the district court complied with the mandate of *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), by asking Fout if he had any additional objections. *Id*. at PageID 462. In response, Fout reiterated several of the arguments he had previously made to the court. *See id*. at PageID 463–67. He also objected to certain statements made about his alleged involvement with minors,[1] *id*. at PageID 465, as well as the court's use of the online chat transcripts to reach a conclusion about Fout's level of functioning. *Id*. at PageID 467.

The court acknowledged that it had made "an incorrect reference to involvement with minors" in the course of passing sentence, but denied that it had used the allegations of such involvement in deciding the sentence. *Id*. at PageID 470–71. In response to the objection about the court's determination of Fout's functional level, the court replied:

> The court considers the level of functioning of the Defendant in a couple of ways; one, his proclivity or inclination to commit the offense that he's committed here. Was he more inclined to commit the offense based upon a lower level of functioning, number one; and, number two, does that present an issue of recidivism in the future, going forward. So that really cuts both ways in this particular case.

*Id*. at PageID 468. The court also emphasized that:

> The severity of the offense, the nature of these photographs, ordinarily, would cause the court to go much above the middle of the guideline range, really more toward the upper end of the range. But those mitigating factors that have been argued as being ignored by the court were actually used by the court in imposing a sentence at the bottom of the guideline range.

*Id*. at PageID 469.

---

[1] The PSR included allegations from an eight-year-old cousin of Fout who claimed that Fout had assaulted him in 2008. R. 12-1 at 4–5. At the time of sentencing, this accusation had not led to additional charges. At one point during the sentencing hearing, the district court commented that "it's clear to the court that Mr. Fout has demonstrated an interest in engaging in sexual activities with very small children." R. 47 at PageID 442.

**STANDARD OF REVIEW**

We review a district court's factual findings during sentencing for clear error. *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). A district court's application and interpretation of the Sentencing Guidelines is reviewed *de novo*. *Id*.

We review a district court's final sentencing determination for "reasonableness under a deferential abuse of discretion standard." *United States v. Cochrane*, 702 F.3d 334, 343 (6th Cir. 2012). Reasonableness review includes both a procedural and a substantive component. *Id*. at 344.

We must "first ensure that the district court committed no significant procedural error." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If the sentence is procedurally sound, then we will review the sentence for substantive reasonableness. *See Gall*, 552 U.S. at 51.

**DISCUSSION**

On appeal, Fout first argues that the district court's determination regarding his level of intellectual functioning and the use of that determination at sentencing was unreasonable. Specifically, he argues that his sentence was affected by the district court's "unreasonable speculation that Mr. Fout's cognitive deficiencies may have made him more inclined to commit his offense and more likely to present an issue of recidivism in the future." Appellant's Br. at 30–31 (internal quotation marks omitted). He then characterizes the district court's assessment of his functioning as "based on facts not in evidence." *Id*. at 31.

Fout appeals only the length of his term of incarceration, not the terms of his supervised release. This is significant because in discussing Fout's level of functioning, the district court explicitly stated that this issue "does not alter my analysis in terms of the length of incarceration that would be imposed." R. 47, PageID 451. The district court's disclaimer, when taken together with the fact that the court imposed a bottom-of-the-range sentence, conclusively demonstrates that any alleged error did not cause the defendant to receive a more severe sentence. Therefore, any error was harmless. *See United States v. Wright*, 747 F.3d 399, 415 (6th Cir. 2014).

Furthermore, to the extent that Fout suggests that the district court believed that Fout was both more predisposed to committing a sexual offense and more likely to recidivate, the record does not support that suggestion. While the court did allude to both the issue of predisposition and the issue of recidivism as being affected by Fout's level of functioning, *see* R. 47, PageID 468, the court said that these issues "cut[ ] both ways in this particular case," seemingly implying that in at least one sense Fout's level of functioning did provide a mitigating factor to offset an aggravating factor. *See id*. The most natural reading of these comments is that the district court's application of Fout's functional level to the sentence was something of a wash, which corroborates the district court's earlier statement that Fout's level of functioning did not affect his term of incarceration.

Fout's second argument is that the district court's assessment of his functioning was "based on facts not in evidence." Appellant's Br. at 31. The essence of this argument is that the court did not accept the diagnosis of "borderline intellectual functioning" cited in Fout's PSR and instead relied on its own impressions of certain online chat transcripts in reaching an independent conclusion about Fout's level of functionality. Properly categorized, this is not a

challenge to "facts not in evidence," but simply a disagreement with the relative weight the court gave to Fout's formal diagnosis. Fout's argument on this point is conclusory and he points to no caselaw that bars a court from letting its findings be informed by its impressions of a defendant's allocution in a chat transcript. Moreover, it is not even clear that the district court rejected the formal diagnosis; the phrase "borderline intellectual functioning" is not a comprehensive description of an individual's capabilities and the court seems to have been responding to the particular gloss on that diagnosis presented by defense counsel.

Finally, Fout argues that the district court unreasonably deviated from the proper procedure by refusing to rule on Fout's argument that he faced an increased risk of injury or abuse in prison. *See* Appellant's Br. at 33–37. But the district court did in fact rule on Fout's vulnerability argument. The court referred to the argument as "pure speculation," R. 47 at PageID 432, and commented that "the Bureau of Prisons has a variety of individuals that are much smaller and that are much more frail than this defendant." *Id*. at PageID 433. The court also solicited a response from the government, which described the measures in place to protect incarcerated sex offenders. *See id*. at PageID 422–25. Thus, the district court did not believe that Fout had demonstrated an unacceptably large risk as compared to other inmate subpopulations.

Fout further argues that the district court failed to recognize its discretion in the matter, Appellant's Br. at 35, but at no point did the district court suggest that its decision was driven by anything other than Fout's inability to persuade the court that he would face unacceptably large risks during a long period of incarceration. Fout also attempts to draw an analogy between his argument and the vulnerable victim enhancement under USSG § 3A1.1(b). *See id.* This analogy is unavailing; if anything, the lack of a corresponding sentencing guideline for vulnerable

defendants highlights the difference between the treatment of vulnerable victims and the sentencing of allegedly vulnerable defendants. The district court considered this argument in a procedurally reasonable way. And because the district court relied on its "institutional advantage that comes with frequent sentencing of offenders" to reach a ruling on this argument, *see United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008), Fout has not shown an abuse of discretion or rebutted the presumption of reasonableness associated with his within-the-range sentence.

"The fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of § 3553(a) in all relevant respects." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). While the district court did not agree with Fout's arguments for a downward variance, Fout has not shown that the circumstances of his case are so extreme as to mandate a downward variance. Nor has Fout shown that the district court improperly considered the relevant § 3553(a) factors.

**AFFIRMED**.