**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0503n.06**
**Filed: July 19, 2006**

**05-6292**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **WILLIAM CARROLL**, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:   MARTIN, NORRIS and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Defendant-appellant William Carroll is one of five sheriff deputies who brutalized a man in an effort to coerce his consent to search his home.  Forty minutes of the two-hour ordeal were captured by audiotape recording.  This evidence led to criminal charges against all five officers for conspiracy to violate civil rights.  All five pleaded guilty.  Defendant Carroll was sentenced to a prison term of 51 months, the shortest prison term imposed on any of the five.  On appeal, Carroll contends the sentence is unreasonable relative to the sentences imposed on the other, more culpable co-defendants.  He also contends the sentencing court failed to consider evidence of his limited mental capabilities.  On review, we find the sentence to be procedurally and substantively reasonable and therefore affirm the judgment of the district court.

## I. BACKGROUND

The facts are not materially disputed. In the afternoon of July 8, 2004, defendant William

Carroll and four other Campbell County Sheriff deputies (Shayne Green, Samuel Franklin, Gerald

Webber, Jr., and Joshua Monday) went to the home of Lester Eugene Siler in Duff, Tennessee, to

execute an arrest warrant for a probation violation. Because of suspicions that Siler was engaged

in continuing drug trafficking activities, the deputies agreed beforehand that they would "threaten,

intimidate, and physically assault" Siler to obtain consent to search his residence. Stipulation of

Facts, ¶ 2, JA 23. When the deputies identified themselves at the front door of the Siler residence,

Siler exited through the back door. He was apprehended, handcuffed and brought back into the

home. The deputies then ordered Siler's wife and son to leave the home so they wouldn't witness

the "mess" that was about to ensue. Recording Tr. 2-3, JA 200-01.[1]

Almost immediately thereafter, and even before Siler was first asked to consent to a search,

the "slapping, striking, or hitting sounds" commenced. *Id*. at 4, JA 202. Although the transcript is

not clear, this initial battery may have been committed by defendant Carroll. Then Deputy Webber

explained their purposes to Siler:

> Let me tell you something. We're gonna know everybody that's supplying you.
> We're gonna know everything about your business today. And you're gonna take
> us and [sic] where you got your money, we're gonna take every dime you have today
> and if we don't walk out of here with every piece of dope you got and every dime

---

[1]The tape recording was surreptitiously made by Siler. It records the first 40 minutes of the ensuing "interrogation" before the tape ran out. It was transcribed by the government and the transcript was made part of the district court record when it was attached as an exhibit to the government's response to defendant Carroll's motion for variance. Although the transcript appears not to have been properly authenticated, its accuracy is not in dispute.

> you got , you're [sic] fucking ass is not going to make it to the jail. And if you think we're joking, we're not. Because let me tell you something. There's nobody knows we're fucking here. We're doing this on our own, and you're gonna sign a consent to search form and you're gonna give us permission to be here and you're gonna do it our way, cause we're tired of fucking with your ass.

*Id*. at 5-6, JA 203-04. Then, although Siler remained handcuffed for at least part of the time, and offered no physical resistance, he was repeatedly beaten and threatened with serious bodily harm and even death during the next two hours.

The specific nature of the abuse is detailed by the transcript and the stipulations of fact entered into by the deputies in conjunction with their guilty pleas. The actual physical abuse included slapping, punching and kicking Siler (resulting in cuts, bruises and a fractured nose); striking him with a slapjack and a plastic baseball bat; attaching wires from a battery charger to Siler and threatening to electrocute him; and attempting to force his head into a fish tank full of water and into an overflowing toilet. In addition, the deputies threatened to burn him with a cigarette lighter, break his fingers, and shoot him. During the ordeal, the deputies confiscated or stole various items of his personal property, including a laptop computer, jewelry, money, two security cameras and a Sony Play Station 2. Siler never did consent to the search. He and his wife were ultimately arrested and taken to jail.

On investigation of Siler's subsequent allegations of abuse, all five deputies gave sworn written statements to the Tennessee Bureau of Investigation denying any wrongdoing. Only when confronted with the tape recording did their stories change. All five were charged with and pleaded guilty to conspiring to violate Siler's civil rights under color of law. 18 U.S.C. § 241. Deputy Monday was sentenced to a prison term of 72 months; Deputy Webber received 57 months; Deputies

Franklin and Green each received 54 months; and defendant-appellant Carroll was sentenced to 51 months in prison. All five were ordered to pay Siler restitution in the amount of $2,500 for personal property wrongfully taken from his home.

In arriving at Carroll's sentence, the district court expressly considered the various factors prescribed at 18 U.S.C. § 3553(a). He found the applicable advisory Sentencing Guidelines range to be 57 to 71 months, after granting Carroll a two-level reduction pursuant to U.S.S.G. § 3B1.2(b), for his less culpable, minor role in the offense. In addition, he granted Carroll's "motion for variance" in part, sentencing him to a prison term six months below the low end of the advisory Guidelines range. The motion for variance asserted that defendant Carroll's culpability was diminished, not only because his involvement in the actual abuse was limited, but also because he had limited mental capabilities and was ill-equipped to withstand the peer pressure of the other more experienced deputies.

In connection with the need to avoid unwarranted sentence disparities among similarly situated defendants, the district judge expressly observed that the other defendants, albeit significantly more culpable than Carroll, received only slightly harsher sentences because they, unlike Carroll, were the beneficiaries of the government's motions for downward departure pursuant to U.S.S.G. § 5K1.1, based on their substantial assistance in investigating and prosecuting others. No such motion was made on Carroll's behalf, the government explains, because his interview statements were inconsistent and unreliable.

On appeal, Carroll contends 51 months of imprisonment is an unreasonable sentence, reflecting the district court's failure to give due consideration to his mitigating psychological evidence.

## II. ANALYSIS

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are advisory, not mandatory, and a sentencing court must consult the Guidelines as well as the factors set forth at 18 U.S.C. § 3553(a) in fashioning an appropriate sentence. On review, the appellate court is similarly guided by the same Guidelines and factors in determining whether a sentence is unreasonable. *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006). This reasonableness review contains both substantive and procedural components. *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 383-85 (6th Cir. 2005)). We must consider, therefore, the length of the sentence as well as "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Webb*, 403 F.3d at 383. *See also*, *United States v. Wayne Morgan Jones*, 445 F.3d 865, 869 (6th Cir. 2006).

### A. Procedural Reasonableness

Here, defendant Carroll appears to be challenging his sentence on both procedural and substantive grounds. As to procedural reasonableness, Carroll contends the district court failed to adequately consider his limited role in the offense and his limited intelligence. The government responds by arguing that Carroll has, by virtue of his failure to make these objections at the time of sentencing, forfeited his right to appellate review. *See United States v. Bostic*, 371 F.3d 865, 872-73

(6th Cir. 2004) (holding that a party who fails to articulate an objection when given the opportunity to do so after pronouncement of the sentence will have forfeited the right to make any objections not previously raised and will be entitled to review only for plain error). A plain error is an error that is plain or obvious, which may be addressed by the appellate court notwithstanding the party's forfeiture if it affects substantial rights and seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id*. at 373; *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996) .

Defendant Carroll raised both factors, his limited role in the offense and his limited intelligence, in his motion for variance. In that motion and brief in support, filed under seal at his request, Carroll relied on evidence of his limited cognitive resources as a mitigating circumstance. He proposed that a reasonable sentence would be five years on probation, the first year to be spent at the Midway Sanctions Center. During the sentencing hearing, the district court nominally granted the motion for variance, departing six months downward from the low end of the advisory Guidelines range, but declining to grant the lenient sentence requested. At the end of the sentencing hearing, after pronouncing the sentence, the district court, consistent with the procedure prescribed in *Bostic*, asked both counsel if they had any not-previously-raised objections to the sentence as pronounced. No objection was made. That is, even though the district court granted the motion for variance only in relatively small part, defendant Carroll did not object either to the court's failure to explicitly explain its evaluation of the mitigating evidence, or to the extent of the "variance" granted. Carroll's failure to object frustrated the dual purpose of the *Bostic* rule, *i.e.*, to permit the

district court to correct any error on the spot and to facilitate appellate review. *Bostic*, 371 F.3d at 873. Accordingly, it is appropriate to review Carroll's procedural challenge for plain error only.

Yet, whether the instant reasonableness challenge is considered *de novo* or reviewed only for plain error, it is clear from the record that the district court did not fail to adequately consider either Carroll's limited involvement in the offense or his limited mental capabilities. The issues were clearly raised at the time of sentencing, in writing, both by defendant's motion for variance and the government's opposition thereto. As it pronounced the sentence, the district court indicated explicitly that it was considering the § 3553(a) factors in conjunction with Carroll's motion for variance. The court expressly acknowledged that Carroll had played a lesser role in the offense and had received a minor role adjustment that resulted in a lower advisory Guidelines range. Further, by "granting" the motion for variance and departing downward from the advisory Guidelines range, the district court took Carroll's relatively minor role into account in imposing a reduced sentence.

As to the argument that Carroll's limited mental capabilities represent a mitigating circumstance warranting a reduced sentence, Carroll is right: the district court did not specifically mention it. Neither did he or his attorney mention it at the sentencing hearing. When given the opportunity to address the court on the motion for variance, defendant's counsel simply referred to and rested on the written memorandum and exhibits filed in support of the motion. The memorandum and exhibits had been filed under seal, at Carroll's request. The Assistant United States Attorney, in turn, similarly limited his comments on the issue at the sentencing hearing. Noting that the memorandum and exhibits had been filed under seal, he observed summarily, "there

is nothing in here that takes him, that sets him apart from, quite frankly, the vast majority of defendants that come through the criminal justice system." Sentencing Tr. p. 6, JA 127.

Viewed in this context, it is apparent that the district judge refrained from mentioning evidence of Carroll's low IQ (in the "borderline range," between mild retardation and low-average intelligence) and "limited cognitive resources," not because he had deliberately ignored or carelessly neglected to consider the evidence. Rather, he refrained from mentioning these matters in open court, consistent with the attorneys' practice, out of respect for the order to seal and for defendant Carroll's privacy. His consideration of Carroll's limited mental capabilities is evident in his reference to "the history and characteristics of the defendant;" in his granting of the motion for variance; in his recommendation that Carroll receive educational and vocational training through the Bureau of Prisons; and in the sentencing requirement that Carroll "participate in a program of mental health treatment, as directed by the probation officer." *Id*. at 23, JA 144.

The sentencing judge could have been more explicit about the impact of his consideration of defendant Carroll's low intelligence on the ultimate sentence. However, the record adequately demonstrates that the court explicitly considered the § 3553(a) factors, including Carroll's specific history and characteristics, and did not "simply select what it viewed as an appropriate sentence." *See Richardson*, 437 F.3d at 554. To require more, to require the sentencing court to explicitly address every defense argument for a lower sentence, irrespective of the colorable merit, under threat of reversal for procedural unreasonableness, would be to improperly engage in "appellate micromanaging of the sentencing process," an exercise which the Sixth Circuit has expressly abjured. *Wayne Morgan Jones*, 445 F.3d at 871.

Accordingly, we conclude the judgment of sentence is not procedurally unreasonable.

**B. Substantive Reasonableness**

Defendant Carroll also argues that a 51-month term of imprisonment is unreasonably long; that it is longer than necessary to deter wrongdoing, promote respect for the law, and protect the public. In *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), the Sixth Circuit joined other circuits in adopting the rule that a sentence within the applicable advisory Guidelines range is presumptively reasonable. Here, the district court found the applicable Guidelines range to be 57 to 71 months. Carroll does not dispute the correctness of this calculation or the applicability of this advisory range. Hence, to prevail on this claim of error, Carroll must not only rebut the presumption that a prison sentence as long as 71 months is reasonable, but moreover, must also show that even his reduced sentence of 51 months is substantively unreasonable.

Carroll attempts to make this showing by urging the court, again, to view his relatively minor role in the offense and his low intelligence as mitigating circumstances warranting a shorter prison sentence. Yet, as discussed above, it is clear that the district court did consider these factors and did in fact impose a reduced, below-Guidelines range sentence because of them. Carroll thus finds himself arguing that the extent of the reduction granted is unreasonably small.

As a threshold matter, we note that there is authority for the proposition that where a defendant is merely challenging the extent of downward departure granted by the sentencing court, a matter committed to the sentencing court's complete discretion, appellate review is foreclosed. *See United States v. Justin Jones*, 417 F.3d 547, 551 (6th Cir. 2005). The better view is reflected in *United States v. McBride*, 434 F.3d 470, 477 (6th Cir. 2006), where the court recognized that in

the post-*Booker* advisory Guidelines era, Guidelines-based departure decisions are subject to review for reasonableness.

Still, defendant Carroll has failed to rebut the presumption that his 51-month sentence is reasonable. In pronouncing the sentence, the district judge adequately explained his analysis of the relevant factors. He expressly took note of: the seriousness of the offense ("an egregious breach of conduct by law enforcement"); the "lesser role" apparently played by Carroll, for which he received a minor role adjustment; Carroll's obstruction of the investigation (initial denial and continuing refusal to provide straight answers, in spite of which Carroll received credit for acceptance of responsibility); the unlikelihood of recidivism by Carroll (ostensibly because his law enforcement career was at an end); Carroll's need for educational and vocational training and mental health treatment (based on information presented with Carroll's motion for variance); the fact that other more culpable co-defendants' prison sentences were only slightly longer than Carroll's because they received the benefit of motions for downward adjustments (which advantage Carroll forfeited by his non-cooperation); and the need for restitution (theft of personal property for which Carroll appears to have been primarily responsible).

Carroll has failed to demonstrate that the sentencing court relied on any impermissible factor, assigned an unreasonable amount of weight to any permissible factor, or otherwise selected the sentence arbitrarily. *See United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). Quite to the contrary, the sentencing judge appears to have carefully considered and prudently balanced the various pertinent factors in arriving at the sentence. In particular, the court's refusal to grant a greater reduction because of Carroll's low intelligence has not been shown to be unreasonable. As

observed by the government, Carroll's poor academic record and low intelligence are not characteristics that distinguish him from most criminal offenders appearing before the courts for sentencing. Neither are they circumstances that warrant leniency in the absence of a showing that Carroll had diminished capacity to understand or control the wrongfulness of his conduct. Further, the suggestion that he should be viewed as less culpable for his participation in the admitted conspiracy because he is a "naïve follower," who "was not able to stand up to the other officers," is refuted by the audio-recording transcript. Although the transcript reveals that Carroll *may* have had less involvement in physically abusing Siler than some other deputies, his role was not that of a reluctant or passive observer. Despite opportunities to remove himself from the scene of the beating, the transcript shows that Carroll may have been the first to administer blows, repeatedly ordered Siler to sign the consent form during the beating, threatened further harm, and delighted in taking Siler's property.

This was an ugly episode, the violence gratuitous, calculated, malicious and sustained, and defendant Carroll was one of five active participants. While Carroll understandably wishes the court had weighted the various factors differently and fashioned a more lenient sentence, he has failed to demonstrate that a 51-month term of imprisonment is unreasonable. Accordingly, his substantive reasonableness challenge is also overruled.

### III. CONCLUSION

For the foregoing reasons, the judgment of sentence is **AFFIRMED**.