NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0171n.06

No. 09-3643

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 23, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,         )
         )
    Plaintiff-Appellee,         )
         )
v.         )    On Appeal from the United States
         )    District Court for the Southern
ABDULLATIF JABI,         )    District of Ohio
         )
    Defendant-Appellant.         )

Before:      BATCHELDER, Chief Judge; BOGGS and WHITE, Circuit Judges.

BOGGS, Circuit Judge. Abdullatif Jabi, a federal prisoner, was convicted in district court of bank fraud and identity theft. He now challenges his 36-month sentence as both procedurally and substantively unreasonable. We affirm.

I

In January 2007, multiple state and federal law-enforcement agencies began investigating the activities of a group of individuals in the Columbus, Ohio, area. The investigators believed that the group members were engaging in various forms of bank fraud, identity theft, and money laundering.

During the investigation, a United States Secret Service agent uncovered evidence that the defendant, Abdullatif Jabi, had committed acts of fraud. Jabi's fraudulent activity began in mid-November 2006, when he deposited eight checks into a business account at Sky Bank. Sky Bank immediately credited Jabi's business account, which Jabi had opened under a false business name,

with the funds. However, the funds did not exist—the checks had been written to draw from a nonexistent bank account. Jabi withdrew the funds quickly from the business account before the checks could be rejected for insufficient funds, defrauding the bank of over ten thousand dollars.

As the investigators discovered, Jabi's bank fraud did not end there. On May 25, 2007, Jabi opened two business accounts at Huntington National Bank, using the name of a shell business that he had incorporated. Utilizing the same fraudulent scheme as before, Jabi had $17,632.46 purportedly transferred into the account, and he then quickly withdrew as much as he could before the bank realized that the funds did not exist. Jabi was spotted, however. While withdrawing $8,500 in counter checks, payable in cash and signed in his own name, he was identified in surveillance photos as the individual cashing the checks. Jabi also used the account's funds to purchase money orders in the total amount of $8,716.60, and this conduct was also caught on film. After these withdrawals, Jabi took steps to escalate his scam by opening several new business accounts at various banks in the area. On May 30, 2007, Jabi opened a business account at Bank of America. Next, on January 12, 2008, Jabi opened two more business accounts at Charter One Bank. Five days later, Jabi opened yet another business account at Key Bank, providing a social security number that belonged to Sean Smith, a resident of New York. Smith was interviewed by investigators and explained that he did not know Jabi, or anyone at all in central Ohio for that matter.

On March 19, 2008, Jabi attempted to cash a fraudulent check at a U.S. Bank branch and was refused. Later that day, he tried to cash his fake check at another U.S. Bank and was refused again Showing incredible persistence, albeit much to his own detriment, Jabi went to a *third* U.S. Bank—still on the same day—and again tried to cash the fraudulent check. He was arrested at the

scene. On his person were various forms of identification for both himself, Abdullatif Jabi, as well as the similarly named "Jabi Abdullatif." The two identities had different birth dates.

Investigators next searched Jabi's car and uncovered several fraudulent checks; documents in his name, his reversed name, and six other names; documents linked to multiple false addresses; business check cards in the names of the shell businesses; and a bank check card in another individual's name. Also in the car was a briefcase that contained check books in the name of one of Jabi's fake businesses, check books in the name of another individual, mail belonging to another individual, and various official forms of identification in the names of other individuals.

On April 29, 2008, Jabi was indicted by a grand jury on seven counts, including conspiracy to defraud a financial institution, four counts of defrauding financial institutions, possession of counterfeit access devices, and using the means of identification of another person. *See* 18 U.S.C. §§ 371, 1344, 1029(a)(3), and 1028A(a)(1).

On November 25, 2008, Jabi pleaded guilty to Count IV, defrauding a financial institution, and Count VII, using another person's means of identification. *See* 18 U.S.C. §§ 1344, 1028A. In exchange for Jabi's plea, the government dismissed the remaining five counts against him.

Prior to sentencing, a probation officer completed a Presentence Investigation Report ("PSR"). The PSR determined that the base offense level for Jabi's bank-fraud conviction under 18 U.S.C. § 1344 was seven and that, after adding eight levels because the amount of loss was between $70,000 and $120,000 and subtracting two levels because Jabi accepted responsibility for his crimes, Jabi's total offense level was 13. The PSR next determined that Jabi had no criminal history and accordingly placed him in criminal history category I. Based on these calculations, the Guidelines

recommended a sentence of 12 to 18 months in prison for Jabi's bank-fraud conviction. USSG §5A. The PSR also noted that Jabi faced a mandatory 24-month consecutive sentence for his identity-theft conviction. 18 U.S.C. § 1028A(a)(1), (b)(2).

Jabi was sentenced on April 10, 2009. At the hearing, Jabi did not object to the factual statements contained in the PSR. Jabi's primary argument, both at the hearing and in his previously filed sentencing memorandum, was that he deserved a four-level reduction in his offense level because he was a minimal participant in the offense.[1] The sentencing judge ruled otherwise, observing that Jabi actively opened business and merchant accounts, and that he actively used those accounts to fraudulently withdraw funds deposited by shell businesses that Jabi himself had incorporated for the purpose. The court next considered the section 3553(a) factors and gave Jabi the opportunity to allocute. Jabi's allocution was a brief one. He stated only that "I apologize and I'm sorry and I love this country, your Honor, and never ever in my life have trouble only for these people and I'm so sorry." The court sentenced Jabi to 12 months in prison, at the bottom of the Guidelines range, for his bank-fraud conviction and, as required by statute, a consecutive term of 24 months in prison for his identity-theft conviction.

Jabi filed this timely appeal of his sentence, and this court has jurisdiction to review the final judgment of the district court. 28 U.S.C. § 1291.

---

[1]Specifically, Jabi argued that he was ordered to conduct the fraudulent conduct by people pretending to be his friends. Jabi did not point to any specific individuals, however, and the government argued that, although its investigation uncovered another participant, it uncovered no information suggesting that the other participant was more significant than Jabi in the commission of the crimes.

II

A

The Sentencing Guidelines direct the district court to decrease a defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity," or by four levels "[i]f the defendant was a minimal participant in any criminal activity." USSG §3B1.2. The Guidelines' application notes define a minor participant as one "who is less culpable than most other participants," and a minimal participant as one "who [is] plainly among the least culpable of those involved in the conduct." *Id*. at §3B1.2, comment. (nn.4–5). Because adjustments under section 3B1.2 are based primarily upon factual determinations, we review a district court's determination of whether a defendant merits a mitigating-role adjustment only for clear error. *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009).

Jabi fails to demonstrate that the district court committed clear error by denying his request for a section 3B1.2 adjustment. In support of his argument, Jabi points only to the fact that other people deposited money into his business accounts, but that hardly demonstrates that Jabi—who incorporated the businesses, set up the business bank accounts, and withdrew the money—was a minor participant. Indeed, compared to Jabi, it was the people who deposited the money—if indeed there were such people, as the record reflects none—who could be considered minor participants. Jabi also asserts, without pointing to any supporting facts, that "it is clear that [he] was a pawn in a much bigger conspiratorial fraud scheme." Appellant's Br. at 9. However, the application notes make clear that a sentencing judge is not required to make a favorable finding "based solely on the

defendant's bare assertion," which is all that Jabi musters here. USSG §3B1.2, comment. (n.3(C)).

Accordingly, we hold that the district court properly denied Jabi a mitigating-role adjustment.

B

Jabi also argues that his sentence is too long, and this court reviews such challenges under the abuse-of-discretion standard. *Groenendal*, 557 F.3d at 423. Accordingly, that the panel "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal." *Gall v. United States*, 552 U.S. 38, 51 (2007). Further, this court affords within-Guidelines sentences a presumption of reasonableness. *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010).

Jabi's sentence is at the bottom of the Guidelines range and, as a within-Guidelines sentence, is presumptively reasonable. *Ibid.* Jabi argues that he should have received a lower sentence "because of his minimal education, the language barrier, his remorse, [his] lack of prior criminal history, as well as [his] being subject to deportation." Appellant's Br. at 12. Jabi also makes a passing reference to the sentencing memorandum that he filed below, but he does not include any additional arguments in his appellate brief. Because arguments not included in an appellant's opening brief are waived, we will not pass judgment on the merits of any additional arguments that Jabi presented below. *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("The incorporation by reference of arguments made at various stages of the proceeding in the district court does not comply with the Federal Rules of Appellate Procedure." (citing Fed. R. App. P. 28(a)(9))).

Jabi fails to overcome the presumption of reasonableness. His remorse was factored into the Guidelines calculation, as was his lack of criminal history. Indeed, Jabi's adjusted offense level was 15, which corresponds to a possible Guidelines sentence ranging from 18 all the way to 51 months in prison, depending on the criminal history category. USSG §5A. Jabi's sentence of 12 months—which reflects his lack of a criminal history, the downward adjustment for his acceptance of responsibility, and the judge's decision to sentence him at the *bottom* of the adjusted range—clearly reflects that the judge adequately accounted for the factors upon which Jabi relies. Further, Jabi presents no argument as to how or why his minimal education or poor English skills render his sentence too long. Jabi's elaborate schemes manifested a general proficiency in both areas, and, accordingly, the district judge's order that Jabi must earn his GED while in prison sufficiently accounted for the section 3553(a) factors as they relate to Jabi's lack of education. Finally, although the fact that Jabi will be deported after serving his sentence could counsel toward a shorter sentence, Jabi's sentence reflects that the district court reasonably balanced Jabi's pending deportation with the other relevant sentencing factors. Simply put, Jabi's sentence was a reasonable one.

III

For the foregoing reasons, we AFFIRM the judgment of the district court.