*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0015p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

JAMES HALL,

                *Defendant-Appellant.*

No. 08-4368

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 07-00485-001—Christopher A. Boyko, District Judge.

Decided and Filed: January 18, 2011

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Amy B. Cleary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Joseph M. Pinjuh, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

SILER, Circuit Judge. James Hall pleaded guilty to five drug charges. He now appeals the procedural and substantive reasonableness of his sentence. For the following reasons, we **AFFIRM**.

1

**BACKGROUND**

In 2007, Hall pleaded guilty to four counts of distribution of cocaine base and one count of possession with the intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and (C). In his plea agreement, Hall reserved the right to appeal his sentence if the district court applied an offense level greater than 27 to determine his sentencing range under the Guidelines.

In 2008, Hall was convicted of aggravated murder and possession of a weapon under a disability in Ohio state court. At Hall's state trial, the state argued that Hall murdered Jeff Queen in retaliation for Queen's cooperation with law enforcement that led to Hall's federal drug charges. In May 2008, the Mahoning County Court of Common Pleas sentenced Hall to a term of imprisonment for life without parole for aggravated murder. It also sentenced Hall to a three-year term of imprisonment for a firearm specification under the aggravated-murder conviction and an additional five-year term of imprisonment for Hall's conviction for possession of a firearm under a disability. Hall was ordered to serve these sentences consecutively to one another and to his life sentence for aggravated murder.

The district court here sentenced Hall in August 2008. When determining Hall's advisory sentencing range under the Guidelines, the district court initially applied a base offense level of 30.[1] In light of the facts surrounding Hall's state murder conviction, the district court applied a cross-reference in USSG § 2D1.1 (Nov. 2007) to enhance Hall's offense level. USSG § 2D1.1(d)(1) requires that, "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111," then the offense level in USSG § 2A1.1 should be applied. Under § 2A1.1(a), the offense level for first degree murder is 43. With this enhancement and a three-point deduction for Hall's acceptance of responsibility, Hall's offense level was 40.

---

[1]Both the probation office and the district court applied the 2007 edition of the United States Sentencing Guidelines Manual to determine Hall's advisory sentencing range.

The court then calculated Hall's criminal history score. After initially assigning Hall nine criminal history points, it added three points for the offense listed in paragraph 58 of Hall's presentence report. Paragraph 58 listed Hall's aforementioned state convictions for aggravated murder and possession of a firearm under a disability. Without specifying which of these convictions justified the additional three points, the district court brought Hall's total number of criminal history points to 12, thereby setting Hall's criminal history category at V. With an adjusted offense level of 40 and a criminal history category of V, the court determined Hall's advisory sentencing range under the Guidelines to be between 360 months' imprisonment and life.

The district court then sentenced Hall to 480 months' imprisonment for three counts and 240 months' imprisonment for the remaining two. It set those punishments to run concurrently with one another but consecutively to Hall's state sentences. Hall objected to the use of his state murder conviction to enhance his base offense level under the Guidelines. He did not, however, object to the district court's setting his federal sentence to run consecutively to his state sentences. He now appeals his federal sentence, arguing that it is procedurally unreasonable because it does not run concurrently with his state sentences, and that it is substantively unreasonable because the offense level in § 2A1.1(a) was not supported by empirical data when established by the Sentencing Commission.

## DISCUSSION

### A. Standard of Review

We review a district court's sentencing determination for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it imposes a sentence that is either procedurally or substantively unreasonable. *Id.*

A sentence is procedurally unreasonable where a district court fails to calculate or improperly calculates the Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) sentencing factors, selects a sentence based upon erroneous facts, or fails to adequately explain its chosen sentence and its deviation, if

any, from the Guidelines range. *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 51). A sentence is substantively unreasonable if the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)).

**B. Consecutive Sentences**

Hall argues that his federal sentence is procedurally unreasonable because the district court erroneously applied USSG § 5G1.3 when setting his federal sentence to run consecutively to his state sentences. Because Hall failed to object to this decision by the district court, we review Hall's appeal on this point only for plain error.

Where a district court has considered the factors listed in § 3553(a) and the applicable Guidelines and policy statements in effect at the time of sentencing, "the district court's decision whether to impose a concurrent or consecutive sentence pursuant to § 5G1.3 is discretionary." *United States v. Johnson*, 553 F.3d 990, 997-98 (6th Cir. 2009) (quoting *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006)). But, this discretion is not "unfettered." *Johnson*, 553 F.3d at 998. The record on appeal should show that the district court "turned its attention to § 5G1.3(c) and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence." *Id.* (quoting *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997)). A sentencing court, then, should "make[] generally clear the rationale under which it has imposed the consecutive sentence and [should] seek[] to ensure an appropriate incremental penalty for the instant offense." *Id.* (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)).

Hall argues that the district court failed to sufficiently reference § 5G1.3 when explaining its reasons for setting Hall's federal sentence to run consecutively to his state sentences. Evidence that the district court considered § 5G1.3 normally involves some explicit reference to that provision—something that the district court did not do here. *See United States v. Martin*, 371 F. App'x 602, 604-05 (6th Cir. 2010) (citing *United*

*States v. Coleman*, 15 F.3d 610, 613 (6th Cir. 1994)).  But a sentencing court need not do so if there is some other evidence in the record that it considered the section.  *See United States v. Berry*, 565 F.3d 332, 342-43 (6th Cir. 2009).

When explaining why it set Hall's federal sentence to run consecutively to his state sentences, the district court stated that "there is a reference to the guidelines about consecutive sentences.  I believe we had discussed that in chambers."  This indicates that the district court considered § 5G1.3 when making its decision.  Moreover, the commentary to § 5G1.3 provides a district court several considerations to make when setting a defendant's sentence to run consecutively to another undischarged sentence under § 5G1.3(c).  The court should consider the type and length of the prior undischarged sentence, the time likely to be served on the undischarged sentence before release, and whether the undischarged sentence originated in state rather than federal court.  USSG § 5G1.3, comment. (n.3(a)).  The district court here appears to have made these considerations, stating:

> This is a very unique situation because you [Hall] have already been convicted of aggravated murder . . . [y]ou can't get any further deterrence . . . [but] the appellate process has not run through [on the state convictions] . . . and I can't rely upon a state conviction to take care of a federal sentence.

Though the district court did not mention § 5G1.3 specifically, in light of its entire explanation, it is evident that the district court considered § 5G1.3(c) and adequately explained its reasons for applying it when sentencing Hall.

Hall argues, however, that a proper interpretation of § 5G1.3 would have required the district court to set his federal sentence to run concurrently with his state sentences under § 5G1.3(b).  Section 5G1.3(b) states that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction" under USSG §§ 1B1.3(a)(1), (a)(2) or (a)(3) and "was the basis for an increase in the offense level for the instant offense," then the instant offense shall be imposed "to run concurrently to the remainder of the undischarged term of imprisonment."  The commentary to § 5G1.3 clarifies that subsection (b) applies "in cases in which *all* of the prior offense [] is

relevant conduct to the instant offense . . . . Cases in which only *part* of the prior offense is relevant conduct to the instant offense are covered under subsection (c)."  USSG § 5G1.3, comment. (n.2(A)) (emphasis added).  Section 5G1.3(c) provides, on the other hand, that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment."

Both Hall and the government agree that, by applying the cross-reference in § 2D1.1(d)(1), the district court treated the facts of Hall's state murder conviction as relevant conduct.  Section 1B1.3(a)(1) defines the relevant conduct determining a defendant's base offense level under the Guidelines, in part, as "acts and omissions" that occurred while "attempting to avoid detection or responsibility for that offense."  The murder of an informant in retaliation for his cooperation with law enforcement fits squarely within this definition.  Hall argues, then, that because the district court used this relevant conduct to enhance his base offense level under § 2D1.1(d)(1), it should have applied § 5G1.3(b) instead of § 5G1.3(c).

Application of § 5G1.3(b) or (c) depends, however, upon whether *all* of the previous offense is relevant conduct to the instant offense.  The answer to this question turns on whether the term "offense" can be read to refer to more than one conviction.  For example, if Hall's two state convictions are treated as separate "offenses," then § 5G1.3(b) would control because "all" of Hall's state murder conviction was considered when enhancing his federal sentence.  On the other hand, if Hall's two state convictions are treated as one "offense," then § 5G1.3(c) would apply because only "part" of Hall's prior "offense" was used to enhance his base offense level under the Guidelines.

The Second Circuit treats an incident giving rise to multiple convictions as a single "offense" for the purpose of applying § 5G1.3.[2]  In *United States v. Slutzkin*, the

---

[2]The other circuits addressing this question have done so with similar results.  *See United States v. Bauer*, 626 F.3d 406, 409 (8th Cir. 2010) (holding that § 5G1.3(c) applied because the defendant's case involved multiple undischarged terms of imprisonment, only one of which was used to enhance his instant sentence); *United States v. Rogers*, 521 F.3d 5, 12 (1st Cir. 2008) (treating multiple convictions as a single offense for purposes of § 5G1.3(b)); and *United States v. Kimble*, 107 F.3d 712, 714-15 (9th Cir. 1997) (holding that § 5G1.3(c) applied where defendant's undischarged sentence resulted from multiple

defendant was convicted in state court on two counts of attempted assault and one count of carrying a pistol without a permit arising from an altercation with law enforcement. 382 F. App'x 65, 66 (2d Cir. 2010). From this incident, the defendant was also federally convicted of intent to distribute cocaine base. *Id.* at 67. When sentencing the defendant in federal court, the district court enhanced the defendant's base offense level due to the defendant's possession of a dangerous weapon—the pistol—pursuant to § 2D1.1(b)(2). *Id.* The district court then applied § 5G1.3(c) to set the defendant's federal sentence to run consecutively to his state sentence. *Id.*

The Second Circuit affirmed this application of § 5G1.3(c), holding that, even if the defendant's conviction for possession of a pistol was "relevant conduct" to his federal offense under § 1B1.3, the defendant "was also sentenced in state court for two counts of attempted assault." *Id.* at 69. These assault convictions were neither relevant conduct to the instant federal offense nor were they a basis for an increase in the defendant's offense level. As a result, at most, "only *part* of the prior offense [was] relevant conduct," and the court held that the defendant was properly sentenced under § 5G1.3(c). *Id.* (emphasis added). We agree with the Second Circuit's analysis on this issue.

Under this definition of what constitutes an "offense" under § 5G1.3, the district court here properly applied § 5G1.3(c) in setting Hall's federal sentence to run consecutively to his undischarged state sentences. Hall's conduct in Queen's murder resulted in two state convictions: aggravated murder and the unlawful possession of a firearm. The district court used only one of these convictions—murder—to enhance Hall's base offense level. Section 2D1.1(d)(1) permits only conduct constituting murder under 18 U.S.C. § 1111 to be used to enhance a defendant's sentence, necessarily excluding Hall's state firearm conviction. Furthermore, the district court appeared to exclude Hall's state firearm conviction from use as relevant conduct by using the conviction to enhance Hall's criminal history score. As a result, because it used only "part" of Hall's state offense as relevant conduct to enhance the base offense level under

_____

convictions, only one of which was used to enhance his instant sentence).

the Guidelines, the district court was free to use its discretion in setting Hall's federal sentence to run consecutively to his undischarged state sentences. Because the district court sufficiently explained its rationale for doing so and considered the §3553(a) sentencing factors, it did not commit plain error in its application of § 5G1.3(c) when sentencing Hall.

**C. The District Court's Enhancement of Hall's Base Offense Level**

Hall also argues that his sentence is substantively unreasonable because it was enhanced using a Guideline offense level that was not based upon empirical data. United States Sentencing Commission, "Fifteen Years of Guidelines Sentencing," 47 (2004). Hall cites *United States v. Grant*, No. 8:07CR242, 2008 WL 2485610, at *4 (D. Neb. 2008), for the proposition that, as a result, the offense level for murder in § 2A1.1 is a less reliable appraisal of a fair sentence.

A sentencing court is free to reject a Guidelines range based on policy considerations. *United States v. Janosko*, 355 F. App'x 892, 895 (6th Cir. 2009) (recognizing this principle in the child-pornography context). The Seventh Circuit has thus noted that "rejecting a guideline [because it] lack[s] a basis in data, experience, or expertise would [] be proper." *United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009). But a district court is not *"required* to consider . . . an argument that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation." *Id.* at 367-68 (emphasis in original). Under the presumption of reasonableness that we give to a district court's within-Guidelines sentence, "we will not second-guess [a district court's] decision[] . . . simply because the particular Guideline is not empirically-based." *Janosko*, 355 F. App'x at 895 (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 (5th Cir. 2009)).

The district court here explicitly considered the § 3553(a) factors when sentencing Hall and explained that Hall's conduct in committing murder—his lack of emotion, connection to drug trafficking and willingness to kill for hire—justified such a severe punishment. Even if the offense level in § 2A1.1(a) does not fit every murder, Hall has not shown that it fails to fit *this* murder. As a result, the district court did not

abuse its discretion in relying upon the base offense level in § 2A1.1(a) to determine Hall's appropriate sentence.

**AFFIRMED.**