**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1035n.06

Nos. 10-5245/10-6147/10-6154/11-6059

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Sep 27, 2012*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,  )
                                            )
    **Plaintiff-Appellee,**   )
                                            )
                                                                   )  ON APPEAL FROM THE
v.                                         )  UNITED STATES DISTRICT
                                            )  COURT FOR THE EASTERN
GINGER WIGGINS (10-5245),   )  DISTRICT OF TENNESSEE
DANIEL G. HARRIS (10-6147),  )
JAMES R. GRIFFITH (10-6154), )
and GREGORY ALAN MERCER  )  **O P I N I O N**
(11-6059),                               )
                                            )
    **Defendants-Appellants.**  )
                                            )

**Before: MOORE and COLE, Circuit Judges; and ROSE, District Judge.**[*]

    **KAREN NELSON MOORE, Circuit Judge.** These appeals concern challenges to the defendants-appellants' sentences arising out of their participation in a conspiracy to manufacture and distribute methamphetamine. First, Defendant-Appellant Ginger Wiggins contests the application of the U.S.S.G. § 2D1.1(b)(10)(C)(ii) substantial-risk-of-harm enhancement ("Substantial-Risk-of-Harm Enhancement") to her sentence.[1] Second, Defendant-Appellant Daniel G. Harris appeals the extent of the departure he received under U.S.S.G. § 5K1.1 as well as the procedural and substantive reasonableness of his sentence. Third, Defendant-Appellant James R. Griffith argues that the district

---

    [*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

    [1]The current version of this provision is U.S.S.G. § 2D1.1(b)(13)(C)(ii).

court should have granted him a variance to receive a below-Guidelines sentence. Finally, Defendant-Appellant Gregory Alan Mercer claims that he should have received the U.S.S.G. § 3E1.1 acceptance-of-responsibility reduction ("Acceptance-of-Responsibility Reduction"). For the following reasons, we **AFFIRM**.

## I. BACKGROUND

On October 14, 2009, a superseding indictment charged the defendants with multiple counts related to their involvement in a conspiracy to manufacture and distribute methamphetamine. Count One of the indictment charged the defendants with conspiring to manufacture, distribute, and possess with the intent to distribute fifty grams or more of methamphetamine and five hundred grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). Wiggins, Harris, and Griffith pleaded guilty to Count One. Mercer attempted to plead guilty, but his plea was rejected by the district court at his initial sentencing hearing. Mercer proceeded to trial where he was convicted on two counts related to the conspiracy.

Pursuant to a plea agreement, Wiggins pleaded guilty to a lesser-included offense of Count One of the indictment, involving fifty or more grams of a mixture containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). In her plea agreement, Wiggins agreed that the government could prove that her home was used as a location to cook methamphetamine and that chemical by-products drained directly into her backyard. At sentencing, the government argued for the Substantial-Risk-of-Harm Enhancement because the lab

endangered both human life and the environment. The district court determined that the Substantial-Risk-of-Harm Enhancement did apply to Wiggins with respect to human life, given the proximity of neighboring homes, but not with respect to the environment. After the three-level enhancement, Wiggins's total offense level became twenty-four. Combined with her criminal history category of I, Wiggins's Guidelines range became fifty-one to sixty-three months of imprisonment. The district court imposed a sentence of fifty-one months of imprisonment.

Like Wiggins, Harris pleaded guilty pursuant to a plea agreement to a lesser included offense of Count One of the indictment. At sentencing, the district court granted the government's U.S.S.G. § 5K1.1 motion for Harris's substantial assistance and departed downward from an offense level of thirty-one to twenty-nine. Combined with his criminal history category of II, Harris's Guidelines range became 97 to 121 months of imprisonment. Harris argued that he should receive a downward variance in addition to the departure because "[u]p until a few years ago, [he] had no prior convictions" and his criminal behavior did not begin until he became addicted to methamphetamine. R. 584 (Sentencing Hr'g Tr. at 21) (Page ID #1463). He further argued that the Guidelines' conversion ratio between pseudoephedrine and marijuana is unreasonable. The district court denied Harris's motion for a variance and imposed a sentence of ninety-seven months of imprisonment.

Griffith pleaded guilty to Count One of the indictment pursuant to a plea agreement, but did not receive the benefit of a lesser-included offense.[2] Griffith did, however, benefit from U.S.S.G.

---

[2]At sentencing, Griffith's attorney incorrectly stated that Griffith "has received—rather than a (b)(1)(A), has received and been allowed to plead to a (b)(1)(B)." R. 584 (Sentencing Hr'g Tr. at 48) (Page ID #1490).

§ 5C1.2, the Guidelines' safety-valve provision, because of his limited criminal record. This reduced his base offense level by two points to thirty-six, which was reduced further to thirty-three after the adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). Combined with Griffith's criminal history category of I, his Guidelines range became 135 to 165 months of imprisonment. The district court sentenced Griffith to 135 months of imprisonment.

Mercer also signed a plea agreement in which he agreed to plead guilty to Count One of the indictment. At his arraignment, he expressed several disagreements with the factual basis of the plea agreement but ultimately concluded that he wished to plead guilty. The magistrate judge accepted his plea and recommended that it be accepted. The district court accepted Mercer's plea based on that recommendation. At his initial sentencing hearing, however, Mercer continued to express disagreement with the basis for the government's case. In particular, he argued that the government had overstated the quantity of methamphetamine for which he was to be held responsible pursuant to his plea agreement. Based on this disagreement, the district judge rejected Mercer's guilty plea. Mercer proceeded to a jury trial, where he was convicted on Counts One and Two and acquitted on two other counts.[3] At sentencing, Mercer argued that he was entitled to a reduction in his base offense level because he had accepted responsibility, as evidenced by his attempt to plead guilty. Based on his total offense level of thirty-two and criminal history category of II, Mercer's Guidelines range became 135 to 168 months of imprisonment with a mandatory minimum of 120 months. The

---

[3]Count Two of the superseding indictment charged the defendants with conspiring to possess chemicals for use in manufacturing methamphetamine, in violation of 21 U.S.C. § 841(c)(2).

district court imposed concurrent sentences of 160 months of imprisonment for Count One and 120 months of imprisonment for Count Two.

## II. WIGGINS'S CLAIM

Wiggins claims that the district court erred in applying the § 2D1.1(b)(10)(C)(ii) Substantial-Risk-of-Harm Enhancement to her Guidelines calculation because "there is no proof, other than that of conjecture, that any increase of harm <u>actually</u> took place." Wiggins Br. at 12–13. Wiggins's insistence that the government must prove that an "increase of harm actually" occurred is simply wrong and without support.

Although the Guidelines do not define "substantial risk of harm," Comment 20 to U.S.S.G. § 2D1.1 and our case law make clear that district courts consider four factors in determining whether to apply the enhancement in making the Guidelines calculation: "(1) the quantity of hazardous materials and the manner in which they are stored, (2) the manner of disposal of the hazardous materials and the likelihood of their release into the environment, (3) the duration of the offense and extent of the manufacturing operation, and (4) the location of the laboratory (i.e., in a residential or remote area) and the number of lives placed at substantial risk of harm." *United States v. Whited*, 473 F.3d 296, 297–98 (6th Cir. 2007) (citing *United States v. Davidson*, 409 F.3d 304, 313 (6th Cir. 2005)). Because the Substantial-Risk-of-Harm Enhancement involves a mixed question of law and fact, we review the four factors de novo. *Davidson*, 409 F.3d at 310 (citing *United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003)).

Wiggins fails to identify any factors that the district court wrongly weighed in favor of applying the enhancement. Turning to the factors ourselves, we agree with the district court that the Substantial-Risk-of-Harm Enhancement is warranted.

*Factor 1: Quantity of hazardous materials and manner of storage*

When officers entered Wiggins's home, they "detected a strong chemical odor that they associated with manufacturing methamphetamine," "found components and chemicals used in manufacturing methamphetamine," and discovered "a full functioning methamphetamine lab" in Wiggins's utility room. Wiggins Presentence Report at ¶¶ 22–23. Although there is little information in the record on the quantity of hazardous materials and the manner in which they were stored at Wiggins's home, we have previously recognized that "'the inherent dangers of methamphetamine manufacturing,' which § 2D1.1 'was designed to address,' militates in favor of applying § 2D1.1(b)[(10)(C)(ii)]." *Whited*, 473 F.3d at 300 (quoting *Layne*, 324 F.3d at 470–71).

*Factor 2: Manner of disposal and likelihood of release into environment*

Wiggins does not dispute the fact that chemical byproducts from the lab at her home were drained directly into her backyard, causing law enforcement officers to quarantine her residence. While this disposal is undoubtedly improper, there is little in the record to suggest that it would create a substantial risk to human life. Furthermore, we have previously acknowledged that the second factor is more probative when assessing substantial harm to the environment and less probative regarding humans, as is the case here. *See United States v. Paradis*, 289 F. App'x 66, 68 (6th Cir. 2008). Therefore, the second factor is indeterminate in the case at hand.

*Factor 3: Duration of the offense and extent of the manufacturing operation*

Wiggins pleaded guilty to participating in a conspiracy that manufactured at least fifty grams of methamphetamine between 2006 and 2009. R. 180 (Wiggins Plea Agreement at ¶¶ 4(a)–(e)) (Page ID #356–57). Although there is nothing in the record to indicate how long Wiggins's utility room was used to cook methamphetamine, "the fact that there was an actual operational laboratory in the room, as opposed to simply finished methamphetamine product, suggests more than an insignificant passage of time." *Whited*, 473 F.3d at 300. Thus, the third factor weighs in favor of applying the enhancement.

*Factor 4: Location of the laboratory and the number of lives placed at a substantial risk of harm*

Finally, the fourth factor weighs in favor of applying the enhancement because the location of the laboratory—Wiggins's home—was in a residential area with neighboring homes only 17.6 and 22.6 feet away. R. 544 (Wiggins Sentencing Hr'g Tr. at 10) (Page ID #1330).

Having considered the relevant factors, we conclude that the district court did not err in applying the Substantial-Risk-of-Harm Enhancement to Wiggins's Guidelines calculation because three of the four factors weigh in favor of its application. Wiggins has provided no basis for us to question the reasonableness of her sentence. We affirm Wiggins's within-Guidelines sentence of fifty-one months of imprisonment.

### III. HARRIS'S CLAIMS

**A. Extent of the Downward Departure**

Harris contends that he should have received more than a two-level departure for his cooperation with the government. "Where . . . the district court grants a downward departure for substantial assistance and the defendant's claim on appeal goes only to the extent of the departure, this Court has no jurisdiction over the appeal." *United States v. Jones*, 417 F.3d 547, 551 (6th Cir. 2005). Harris challenges the extent of the district court's downward departure; therefore, we lack jurisdiction to consider that argument on appeal.

**B. Reasonableness of the Sentence Imposed**

Harris also claims that his "sentence of 97 months is wholly unreasonable under the circumstances of this case and 18 U.S.C. § 3553(a)." Harris Br. at 11. In support, Harris notes his "cooperation and early plea of guilty," his lack of a criminal record before he reached the age of thirty (when he started using methamphetamine), and his remorse. Harris Br. at 15–16. He also argues that the conversion ratio between pseudoephedrine and marijuana is unreasonable because it places him in the same category as those running major drug enterprises,[4] whereas he "smurfed" to feed his addiction and not to profit.[5] Finally, Harris contends "that the district court failed to show

---

[4]Harris was held accountable for 146.4 grams of pseudoephedrine, which is equivalent to 1,464 kilograms of marijuana under the Guidelines' equivalency tables. *See* U.S.S.G. § 2D1.1.

[5]Smurfing is the process of making trips to commercial businesses to purchase chemicals and components needed to cook methamphetamine.

8

that it considered [his] arguments and pleas for consideration of a lower sentence as well as the basis for the court's rejection of those arguments and pleas." Harris Br. at 20–21.

We review a district court sentencing determination for both procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38 (2007). Harris appears to challenge both the procedural and substantive reasonableness of his sentence on appeal.

"A sentence is procedurally unreasonable where a district court . . . fails to consider the 18 U.S.C. § 3553(a) sentencing factors . . . or fails to adequately explain its chosen sentence and its deviation, if any, from the Guidelines range." *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011). The adequacy of that explanation, however, varies depending on the circumstances of the case and the complexity of the defendant's arguments, such that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 356 (2007). Harris fails to identify anything in the record that suggests the district court failed to consider the § 3553(a) factors or to explain the chosen sentence. Although brief, the district court noted that it had "considered the nature and circumstances of the offense, the background and history of Mr. Harris, the advisory guidelines range, the 5K1.1 motion filed by the government, and the factors listed in 18 U.S.C. Section 3553(a)." R. 584 (Sentencing Hr'g Tr. at 45) (Page ID #1487); *see also id.* at 19–25 (Page ID #1461–67). This is enough for procedural reasonableness given that Harris made straightforward arguments and received a within-Guidelines sentence.

"A sentence is substantively unreasonable if the district court 'selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *Hall*, 632 F.3d at 335 (quoting *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009)). If the district court imposed a sentence within a properly calculated Guidelines range, we presume that sentence is reasonable on appeal. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). Harris does not point to any argument or factor that the district court failed to consider. Furthermore, his contention that the pseudoephedrine-to-marijuana ratio is unreasonable lacks legal support. Therefore, Harris has not overcome the presumption of reasonableness, especially in light of the fact that he received the benefit of a 5K1.1 substantial-assistance departure and a plea agreement before being sentenced to the low end of his Guidelines range. Giving deference to the district court, we conclude that Harris's sentence of ninety-seven months of imprisonment is not unreasonable, and the district court did not abuse its discretion in imposing it.

## IV. GRIFFITH'S CLAIM

Griffith argues that his sentence of 135 months of imprisonment, the low end of his Guidelines range after receiving the benefit of the safety-valve provision, is unreasonable. Griffith has not identified whether he is challenging the procedural or substantive reasonableness of his sentence; instead, he frames the issue as: "The District Court erred in denying Mr. Griffith's motion for a variance from the sentencing guidelines." Griffith Br. at 4. The thrust of Griffith's argument is that he "provided truthful information to law enforcement" and "cooperated with authorities," but

the district court did not consider his cooperation when considering the 18 U.S.C. § 3553(a) factors.[6]
*Id*. at 5.

At sentencing, the district court reasoned "that a sentence within the guideline range here would comply with the Section 3553(a) factors and would not be greater than necessary to comply with those factors."[7] R. 584 (Sentencing Hr'g Tr. at 55–56) (Page ID #1497). Although the district court failed to address directly Griffith's assistance argument, the record makes clear that the court considered that fact but found that a within-Guidelines sentence was reasonable because Griffith had already received the benefit of the safety-valve provision. While the district court's explanation for the sentence was extremely brief, it is enough given the circumstances and straightforwardness of Griffith's arguments. *See Rita v. United States*, 551 U.S. 338, 356 (2007).

Furthermore, Griffith's argument on appeal is not that the district court failed to consider his cooperation with authorities; rather, Griffith argues that the district court abused its discretion when it denied his motion for a variance. Griffith Br. at 4. The district court did not, however, abuse its discretion because Griffith already received a two-level reduction under the Guidelines' safety-valve

---

[6]We review Griffith's claim under the same standard discussed in section III.B of this opinion.

[7]The district court said this in reference to another defendant but stated that it also applied to Griffith. R. 584 (Sentencing Hr'g Tr. at 55–56) (Page ID #1497–98).

provision.[8]  We conclude that his within-Guidelines sentence is reasonable and affirm his sentence of 135 months of imprisonment.

## V.  MERCER'S CLAIM

Mercer argues that the district court erred in denying his request for a U.S.S.G. § 3E1.1 Acceptance-of-Responsibility Reduction because he attempted to plead guilty pursuant to a plea agreement, but the district court rejected this plea at the initial sentencing hearing.  Mercer claims this is a legal issue—"[w]hat is required to constitute 'acceptance of responsibility'"—that is entitled to de novo review.  Mercer Br. at 14.  Mercer's characterization of the issue is misleading, however, because it overlooks the factual nature of the inquiry:  whether he "clearly demonstrate[d] his acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).

In reviewing the district court's acceptance-of-responsibility determination, "we apply the overall deferential scope of review set forth in *Buford v. United States*, 532 U.S. 59, 64–65 (2001)." *United States v. Bolden*, 479 F.3d 455, 464 (6th Cir. 2007) (citing *United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003)).  Indeed, U.S.S.G. § 3E1.1 Application Note 5 also states that "the determination of the sentencing judge is entitled to great deference."  With respect to the district court's purely factual determinations, "we reject such determinations only if they are clearly erroneous." *Bolden*, 479 F.3d at 464.

---

[8]The two-level reduction had the effect of reducing the low end of Griffith's Guidelines range from 168 to 135 months of imprisonment.  *See* U.S.S.G. Sentencing Table.

The district court did not err in refusing to give Mercer the Acceptance-of-Responsibility Reduction because his conduct did not clearly demonstrate his acceptance of responsibility for conspiring to manufacture and distribute methamphetamine. Mercer's attempt to characterize the issue on appeal as what is required to receive the Acceptance-of-Responsibility Reduction is wrong because there is no debate as to what judges may consider in making that determination. As Mercer notes, the relevant factors are contained in the Application Notes to U.S.S.G. § 3E1.1. Mercer Br. at 15–16.

Mercer contends that his attempt to plead guilty is evidence that he "truthfully admitted the conduct comprising the basis for his plea agreement," a consideration for the sentencing judge in Application Note 1(a). Mercer Br. at 16. The flaw in Mercer's argument is that even if the district court had accepted his guilty plea, he would not be entitled to the reduction as a matter of right. Application Note 3 makes clear that conduct that is inconsistent with acceptance of responsibility can outweigh an entry of a guilty plea for purposes of the enhancement. In the case at hand, Mercer made several statements that were inconsistent with his initial guilty plea, including "I don't believe that I broke the law to the extent that the government says I did" and "I wish that [the Assistant United States Attorney] would review my case and go back over the grams of methamphetamine with my investigator . . . [a]nd I believe that this investigation would [make] a difference in my drug quantity amounts."[9] R. 614 (Mercer 3/31/2011 Sentencing Hr'g Tr. at 34) (Page ID #1641); *id.* at

---

[9]The government also points to Mercer's denial of being a distributor of methamphetamine. The record suggests to us, however, that Mercer's denial was the result of his inability to understand the legal definition of "distribution" rather than an outright denial of the actual conduct.

45–46 (Page ID #1652–53).  Giving deference to the sentencing judge, we conclude that the district court's determination that Mercer did not clearly demonstrate acceptance of responsibility was not clearly erroneous.

## VI.  CONCLUSION

For the reasons discussed with respect to each defendant, we **AFFIRM** the sentences imposed by the district court.