**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0157n.06

Case No. 14-3679

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 27, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DONNADAMEA GRANT, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | OPINION |

BEFORE: KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.[*]

**JON P. McCALLA, District Judge.** On Friday, June 13, 2014, Judge James G. Carr of the Northern District of Ohio sentenced Donnadamea Notae Grant to twenty-four months incarceration. Grant admitted to violations of the terms and conditions of his supervised release. Grant now appeals the sentence imposed. Appellant argues that the sentence must be vacated for two reasons: (1) the district court failed to calculate the correct Guideline sentencing range; and (2) the district court relied on impermissible factors in support of an upward departure above the Guidelines. For the reasons discussed below, we **AFFIRM** Grant's sentence.

---

[*]The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

**I**

The indictment that ultimately led to this appeal was returned on March 1, 2000. Appellant Donnadamea Notae Grant was charged with possessing cocaine with intent to distribute on or about January 27, 2000, in violation of 21 U.S.C. § 841(a)(1) (2000). Grant pled guilty to the offense on August 1, 2000 and was sentenced on April 23, 2001. The district court determined that Grant had a Criminal History Category of I and a total offense level of 23. Judge John W. Potter sentenced Grant under § 841(b)(1)(B) to a within-Guidelines term of imprisonment of forty-six months, three years of supervised release, and a special assessment of $100.

Following Grant's release from his first term of incarceration, he appeared before a magistrate judge on August 5, 2005 for alleged violations of the conditions of his supervised release. Grant was charged with five violations: three law violations for selling crack cocaine within 500 feet of a school; one violation for failure to submit monthly reports as required during the months of April, May, June, and July, 2005; and one violation for failing to notify his probation officer of a change in residence. Grant waived a probable cause hearing and was detained pending his supervised release revocation hearing. On December 20, 2005, Judge James G. Carr held Grant's first supervised release revocation hearing. Grant admitted the violations for failure to submit monthly reports and failure to notify his probation officer of his change in residence. The three law violations were withdrawn. Because the violations admitted were Grade C violations and Grant's Criminal History Category was I, his Guideline range was three to nine months. U.S.S.G. § 7B1.4 (2005). The district court sentenced Grant to a within-Guidelines sentence of four months of incarceration, with credit for time served, and two years of supervised release.

On June 8, 2012, Grant was arrested for possession of heroin. Grant's probation officer filed a Violation Report in connection with this arrest on August 22, 2012. According to the report, Grant was convicted in Lima, Ohio on April 10, 2006 on two counts of trafficking in crack cocaine. As a result, Grant's second term of supervised release did not commence until December 17, 2011.

Following Grant's June 2012 arrest, he absconded. On August 22, 2012, Grant's probation officer filed a Violation Report asserting five violations: (1) a law violation for possession of heroin pursuant to Grant's June 8, 2012 arrest; (2) failure to notify his probation officer of his June 8, 2012 arrest; (3) failure to comply with drug testing conditions of his supervised release; (4) failure to submit monthly reports; and (5) failure to notify his probation officer of a change in residence. According to Grant's attorney at the sentencing hearing, Grant and his fiancée called the police – apparently on June 11, 2014 – in order for Grant to turn himself in. Grant appeared before the magistrate judge on July 25, 2014 and waived his right to a preliminary hearing.

The district court held Grant's supervised release revocation hearing on July 30, 2014. Judge James G. Carr began the proceedings by explaining the stages of supervised release proceedings. Judge Carr explained that if he were to find that Grant had committed one of the violations he had been charged with: "There are many things I can do. On the one hand I can do nothing, or I can, on the other hand, impose a prison term, which I understand . . . is a prison term of up to three years." The district court then noted that the Guidelines range applicable to the charges was four to ten months. The government withdrew the law violation for possession of heroin, and Grant admitted to the remaining violations.

The district court then asked for arguments from the parties as to sentencing. The United States argued that the Guidelines range was appropriate in the case. Grant argued that there were a number of mitigating factors that indicated that a sentence toward the low end of the Guidelines was appropriate. Grant's attorney also specifically argued with respect to the heroin arrest that "Mr. Grant has been adamant the whole time that he did not do anything, he did not break the law there."

The district court responded to the arguments by stating that "a fairly significant term of imprisonment is necessary. This is your second time around on this, it's not the first time. You basically decided to write your own ticket. You got caught, and here we are." As to the arrest for heroin possession, Judge Carr explained as follows:

> I will assume that the arrest was wrongful, and that's hardly a mitigating factor. In fact, it is to some extent an aggravating factor. If in fact there was nothing to fear, there was no reason not to stick around, tell the probation officer, "Look, I caught a case, I'm defending it, I know I will be answerable up in Federal Court, can we wait and see what happens in this case," and the answer is yes.

The district court noted, "You don't have a good history. You have a very bad history." The district court then stated that the sentence would be twenty-four months of imprisonment with no period of supervised release. As a result, the district court explained that Grant was "done with the Federal Court until you catch another case." The district court then admonished Grant regarding the potential seriousness of being caught with a firearm in the future:

> If you are caught with a gun, you are going to be prosecuted, and you are going to get the maximum sentence. It will be another five years in prison. I will impose a very severe term. You have not figured it out. You are 40 years old and you have not figured it out.

In explaining his reasoning for the sentence, Judge Carr stated, "I consider the Section 3553(a) factors. The three that are most important are number one, individual deterrence . . . . Also, to serve public deterrence. . . . Finally, it incapacitates you." Judge Carr reiterated, "I

want to make very it [sic] clear that I have considered the Section 3553(a) factors, but I find the defendant to be in flagrant violation, in unjustified and inexplicable violation of terms and conditions of supervised release for the second time."

Following an initial reference to the then-applicable Guidelines range at the very start of the hearing, the district court never explicitly stated them again. The district court did state, however, that it had "varied upward by a term of, what, 15 months."

Grant timely appealed his sentence.

**II**

**A**

The procedural reasonableness of Grant's sentence is reviewed for plain error. Generally, the standard of review in determining whether a sentence is procedurally unreasonable depends on whether the issue was preserved for appeal. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). In *United States v. Bostic*, this Court suggested that after announcing a proposed sentence, a district court should "ask the parties whether they have any objections to the sentence . . . that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004). "If a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." *Vonner*, 516 F.3d at 385. Following the district court's pronouncement of the sentence, Judge Carr twice asked if Grant had any objections. Grant did not object to the reasonableness of the sentence at either stage. Accordingly, the plain-error standard applies, which requires an appellant to show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

**B**

The applicable Guidelines range in Grant's supervised release hearing was three to nine months. "Where there is more than one violation of the conditions of supervision, . . . the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1. For purposes of his supervised release violation hearing, Grant's Criminal History Category was I. Once the Grade B violation was withdrawn, only Grade C violations remained. Accordingly, the correct Guidelines range was three to nine months. § 7B1.4.

**C**

The Supreme Court has instructed that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). A district court is required to consider the applicable Guidelines range during sentencing. 18 U.S.C. § 3553(a)(4); *see also United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011) (noting that a "sentence is procedurally unreasonable where a district court fails to calculate or improperly calculates the Guidelines range"). Further, when a district court applies a sentence that is outside the applicable Guidelines range, the district court must state in open court "the specific reason for the imposition of a sentence different from that described . . . ." § 3553(c)(2). That means that the district court must "acknowledge the defendant's applicable Guideline range." *United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008) (internal quotation marks omitted). "A sentence imposed without complying with the requirements of § 3553(c) constitutes error." *Id.* at 400–01.

The Sixth Circuit has not previously considered what it means to "acknowledge the defendant's applicable Guideline range." *Id.* at 400. This Court has noted, however, that a district court "arguably err[s] by failing to explicitly state the range on the record." *United States*

*v. McClain*, 429 F. App'x 538, 542 (6th Cir. 2011). Further, this Court has found that § 3553(c)(2) "requires not only a statement of reasons . . . , but also that those statements be made with 'specificity.'" *Blackie*, 548 F.3d at 403. Without such specificity, a sentence cannot be meaningfully reviewed. *Id.*

The district court did not explicitly state the appropriate Guidelines range during Grant's sentencing. The district court stated that in imposing a sentence of twenty-four months, it had "varied upward by a term of, what, 15 months." Although the minor interjection of the word "what" adds ambiguity to the district court's statement, the district court still did not make an *explicit* reference to the appropriate Guidelines range even if the interjection were deleted. Notwithstanding that a reference may implicitly uniquely identify one range, an explicit reference requires reference to both the upper and lower limits of the advisory range. Just as a vector cannot be defined by a magnitude without a direction, a range cannot be defined without each of its bounds. In the instant case, the district court implied that the upper end of the range from which it had varied was nine months. Because the lower limit of the range was not referenced, the district court's statement did not amount to "explicitly stat[ing] the range on the record." *McClain*, 429 F. App'x at 542.

Although the district court "arguably erred by failing to explicitly state the range on the record," *id.*, Grant has not demonstrated that the error affected his substantial rights. Section "3553(c)(2) confers a *substantial* right to meaningful appellate review." *Blackie*, 548 F.3d at 403. A lack of explicit reference to the appropriate Guidelines range does not affect such a right when it appears "from the overall record that the district court was aware of the correct Guidelines range, and it provided enough information and reasoning to enable us to conduct meaningful appellate review." *McClain*, 429 F. App'x at 542.

It appears from the overall record that the district court was aware of the correct Guidelines range. The district court implied that the upper limit of the range from which it was varying was nine months. That uniquely identified the three to nine month range in U.S.S.G. § 7B1.4, as there is no other range with a nine-month upper limit within the Guidelines for supervised release violations.

The district court also provided substantial reasoning for its upward variance. The district court, both at the hearing and in its order of revocation, described the violations at issue as "flagrant." The district court made explicit reference to several of the factors in § 3553(a), and generally provided sufficient information and reasoning for a meaningful review of the sentence imposed.

We therefore find that the district court did not commit plain error in this case by failing to explicitly state the applicable Guidelines range.

## III

## A

Supervised release revocation sentences are reviewed "under a deferential abuse of discretion standard for [substantive] reasonableness." *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007) (internal quotation marks omitted). "In reviewing for substantive reasonableness, we must take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 581 (internal quotation marks omitted). Although sentences within the advisory Guidelines range are presumed to be reasonable, "there is no 'presumption of unreasonableness' for outside-guidelines sentences . . . ." *Vonner*, 516 F.3d at 389–90 *(*quoting *Rita v. United States*, 551 U.S. 338, 354–55 (2007)). "In general, we must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors."

*Bolds*, 511 F.3d at 581. "The fact that we might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* (internal quotation marks and alterations omitted).

**B**

As a threshold matter in reviewing the substantive reasonableness of Grant's sentence, it must be noted that the district court imposed a sentence that was authorized by statute. Grant was indicted on March 1, 2000. Count 5 of the indictment was the only count concerning Grant, and charged him with possessing cocaine on or about January 27, 2000 with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (2000). Grant pled guilty to the charge, which subjected him to a maximum sentence of forty years of incarceration under § 841(b)(1)(B) – a Class B felony, *see* 18 U.S.C. § 3559(a)(2) (2000).[1] The district court then sentenced Grant to forty-six months of imprisonment, three years supervised release, and a special assessment of $100. Following Grant's release, he admitted in 2005 to violations of the terms of his supervised release. Grant was sentenced to four months of imprisonment and two years of supervised release. The violations at issue in this case concern violations that occurred during those two years of supervised release. Section 3583 prescribes that the maximum term of imprisonment for a supervised release violation following an initial conviction for a Class B felony is the lesser of two statutory caps: first, the term to which such a defendant can be sentenced can be no greater than the period of supervised release authorized by the statute that resulted in supervised release; second, for a Class B felony, a defendant cannot be sentenced for more than three years in prison. 18 U.S.C. § 3583(e)(3) (2012). The statute that resulted in Grant's supervised release, 21 U.S.C. § 841(b)(1)(B) (2000), authorized a maximum term of supervised release of four

---

[1] In its brief, the United States incorrectly describes a violation of § 841(b)(1)(B) as a Class C felony. Brief of Plaintiff-Appellee at 24, *United States v. Grant*, No. 14-3679 (6th Cir.). Because the statutory maximum under § 841(b)(1)(B) was 40 years, Grant was convicted of a Class B felony. *See* 18 U.S.C. § 3559(a)(2).

years.  Accordingly, the lesser of the statutory caps is three years.  Because Grant was sentenced to twenty-four months, his sentence was authorized by § 3583.

C

Grant argues that his sentence was substantively unreasonable because the court relied on two impermissible factors.  First, Grant argues the district court improperly considered the conduct underlying the withdrawn Grade B violation.  Second, Grant argues that the district court improperly considered a hypothetical future gun charge in shaping its sentence.  Neither of Grant's arguments is persuasive.

As a factual matter, Grant is incorrect in his assertion that the district court considered the conduct underlying the Grade B violation during the sentencing hearing.  The district court stated that it was the flight following what Grant asserted to be a wrongful arrest that was the aggravating factor.  Specifically, the district court stated its concern that Grant's choice to violate the conditions of his supervised release occurred despite a way forward following the purportedly illegal arrest that would have been consistent with the law.  Nothing in the record indicates that the district court improperly relied on the conduct underlying the withdrawn Grade B violation.

Grant's argument that the district court relied on a hypothetical future crime in crafting its sentence is similarly unavailing.  Although the district court made reference to the potential penalties a future gun charge would bring, the record does not support an inference that the court relied on such a hypothetical charge during sentencing.  The district court prefaced its reference to a potential future gun charge by stating to Grant: "You are done with the Federal Court until you catch another case."  The district court then admonished the defendant, stating that if he were to be prosecuted for possessing a gun in the future, that he would receive a very severe

sentence. Because the district court did not rely on the hypothetical gun charge in determining its sentence, Grant's argument fails.

As previously noted, the district court provided substantial reasoning for the sentence it imposed. The district court, both at the hearing and in its order of revocation, described the violations at issue as "flagrant." Additionally, the district court made explicit reference to several of the factors in 18 U.S.C. § 3553(a). For all of these reasons, the district court's sentence was substantively reasonable.

## IV

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED**.